**AMERICAN RADIATOR & STANDARD SANITARY CORPORATION,**
Plaintiff-Appellant,

v.

**LOCAL 7 OF the INTERNATIONAL BROTHERHOOD OF OPERATIVE POTTERS, AFL–CIO,** Defendant-Appellee.

No. 16888.

United States Court of Appeals
Sixth Circuit.

March 31, 1966.

**456**

J. Mack Swigert, Cincinnati, Ohio, for appellant, Austen B. McGregor, New York City, on the brief, Samuel R. McKinney, Tiffin, Ohio, of counsel.

Joseph E. Finley, Cleveland, Ohio, for appellee, Melvin S. Schwarzwald, Cleveland, Ohio, Arthur F. Graham, Tiffin, Ohio, on the brief, Metzenbaum, Gaines, Schwartz, Krupansky, Finley & Stern, Cleveland, Ohio, Spellerberg & Graham, Tiffin, Ohio, of counsel.

Before PHILLIPS, EDWARDS and CELEBREZZE, Circuit Judges.

HARRY PHILLIPS, Circuit Judge.

This appeal involves a dispute as to whether certain grievances are subject to arbitration under the terms of a collective bargaining agreement.

The employer (appellant) manufactures plumbing ware, among other things. It has a three-year national "basic agreement" with the International Union of Operative Potters, AFL-CIO, and a concurrent three year local bargaining agreement at its Ohio plant with the local union, appellee herein.

The union demanded arbitration of certain grievances hereinafter described. The employer filed this action under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and the Declaratory Judgments Act, 28 U.S.C. § 2201, seeking an adjudication that the grievances are not arbitrable and that the employer will not be bound by any decision by the arbitrator in the arbitration proceedings initiated by the union. The complaint also prayed for an order staying the arbitration proceedings.

The district court refused to stay arbitration and entered summary judgment in favor of the union, holding that:

"The Court finds that the grievances in question involve the application, interpretation, or alleged violation of a provision of the collective bargaining agreement, and that the subject matter of said grievances has in no manner been excluded from the scope of the arbitration agreement. Under the

terms of the collective bargaining agreement the parties are obligated to submit these grievances to arbitration."

This court heretofore denied appellant's motion for preliminary injunction restraining arbitration pending appeal. The case was advanced on our docket for argument.

Provisions of both the basic agreement with the National Union and the local agreement with the appellee local union are before this court for construction.

Article VII of the basic agreement contained a "no strike clause,"[1] a definition of a grievance,[2] and a provision for arbitration of the grievances.[3]

The local agreement provided, in relevant part, that wages effective on the date of the agreement would remain in effect for the duration of the agreement;[4] that management would retain the right to determine the basis of wages;[5] and that management retained the right to introduce new methods of production.[6]

During the period that both agreements were in effect, the employer initiated some important changes in its "glost department," whereby it introduced the use of conveyors as a means of moving products and upon which the necessary work could be done. This eliminated the use of lift trucks and work benches and markedly reduced the physical handling of the various products. Thereafter the employer reclassified all previous jobs in the glost department, describing the new jobs as "conveyor assembler," "conveyor shipper," "conveyor packer," "conveyor lavatory fitter," etc., in the place of the old title of "assembler," "shipper," "packer," "lavatory fitter," etc. The employer also changed the rate of pay from piece rate to hourly rates.

Appellant contends that new jobs were created and that under the contract this was a prerogative of management (footnotes 3 and 6); and that it could set the wage rates thereon (footnote 5).

The union does not dispute the interpretation of the agreement to the effect that if new jobs were created then man-

1. "SECTION 1. Should any difference or dispute arise between the Employer, the Union or the Employees covered by this Agreement there shall be no lockout, strike, work stoppage, slowdown, interruption or impeding of work or other act adversely affecting production on account of such difference or dispute, but the matter shall be settled in accordance with the procedure hereinafter provided."

2. "SECTION 4. For the purpose of this Agreement a 'grievance' shall be limited to a complaint which has not been settled as a result of the discussions required by Section 3 above and which involves the application, interpretation or alleged violation of the provisions of this Agreement or any other Agreement between the parties hereto."

3. A grievance procedure was established and provision made for arbitration if an unsatisfactory decision was reached. Powers of the arbitrator were limited as follows:
   "SECTION VII (f)  The jurisdiction of the arbitrator shall be strictly limited to deciding grievances which conform to the definition set forth in Section 4 of this Article. The Arbitrator shall have no authority to add to, subtract from, or in any way alter or amend the provisions of this Agreement nor to establish, change or determine the application of any wage rate nor to rule on any dispute regarding production standards nor to limit or impair any right that the Management Article in the Local Agreement * * * reserves to the Employer."

4. "ARTICLE V.
   "WAGES
   "SECTION 1. Hourly, incentive and piecework wage rates as well as all job classifications in effect as of the effective date of this Agreement, shall remain in effect for the duration of this Agreement."

5. "SECTION 2. [Article V] Management shall retain the right and responsibility of deciding the basis on which wages shall be paid, such as piecework, daywork, hourly rates or rates on an incentive basis."

6. "ARTICLE VII
   "MANAGEMENT
   "SECTION 2. The Employer reserves the right to introduce new or improved facilities or methods of production."

agement may establish the wage rates under the above cited provisions. It is the position of the union, however, that no new jobs were created inasmuch as there has been no change occurring in the basic operation performed by the workmen and that therefore management has violated Article V, Section 1 of the local agreement (quoted, footnote 4). The union contends that the change resulted in the loss of approximately $1.00 or more per hour to the workers.

We recognize that there may be ambiguity between Article V, Section 1 of the local agreement, relied upon by the union, and Article VII, Section 7(f) of the basic agreement and Article VII, Sections 1 and 2 of the local agreement, relied on by the employer. It is the function of the courts to determine whether a dispute is subject to arbitration. A party will not be required to arbitrate a dispute which he has not agreed by contract to submit to arbitration. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409; Jefferson City Cabinet Co. v. IUE, 313 F.2d 231, 232–233 (C.A.6), cert. denied, 373 U.S. 936, 83 S.Ct. 1539, 10 L.Ed.2d 690. In Warrior & Gulf the Court made it clear, however, that arbitration should not be denied unless it may be said with positive assurance that the clause does not cover the dispute. "Doubts should be resolved in favor of coverage." Warrior & Gulf, supra, 363 U.S. at 583, 80 S.Ct. at 1353. See also, United Steelworkers of America v. General Electric Co., D.C., 211 F.Supp. 562, aff'd 327 F.2d 853 (C.A.6).

It is not the province of the courts to determine issues of fact which bear upon the questions of whether a particular section of the contract has been violated. This is the function of the arbitrator. United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403. It is therefore our opinion that the question of whether new jobs have been created is an issue of fact which bears upon the issue of whether there has been a contract violation as charged by the union.

We agree with the district court that the ambiguities in the language of the collective bargaining agreement should be resolved in favor of arbitrability. We cannot presume that the arbitrator will exceed his power under the contract.

Finally it is contended by the employer that certain grievances should be dismissed because the procedure set forth in the agreement was not followed. These grievances arise from the factual situation previously stated. We hold this also to be a matter for determination by the arbitrator.

In John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 556–557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 the Court said:

"Questions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it. * * *

"Doubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration. * * *

"Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator. * * *"

This court followed this procedure in Local No. 824, United Brotherhood Carpenters & Joiners of America v. Brunswick Corp., 342 F.2d 792 (C.A.6) and in United Steelworkers of America v. General Electric Co., 327 F.2d 853 (C.A. 6).

The decision of the lower court is affirmed.