**LOCAL NO. 6, BRICKLAYERS, MASONS AND PLASTERERS INTERNATIONAL UNION OF AMERICA et al., Plaintiffs-Appellants,**

v.

**BOYD G. HEMINGER, INC., and Frank Fulton, Inc., Defendants-Appellees.**

No. 72-2199.

United States Court of Appeals, Sixth Circuit.

Argued April 9, 1973.

Decided Aug. 9, 1973.

James O. Cross, Akron, Ohio, for plaintiffs-appellants.

Charles A. Morgan, Jr., of Amerman, Burt & Jones Co., Canton, Ohio, for defendants-appellees.

Before PHILLIPS, Chief Judge, LIVELY, Circuit Judge, and O'SULLIVAN, Senior Circuit Judge.

PHILLIPS, Chief Judge.

This is a suit to compel arbitration. The District Court refused to order arbitration, rendering judgment in favor of the appellee employer, Boyd G. Heminger, Inc. The three labor unions appeal. Although Frank Fulton, Inc. also was a party to this litigation in the District Court, the unions, in this appeal, seek only a remand for direction of arbitration with Heminger. Jurisdiction is founded on § 301 of the Labor Management Relations Act, as amended. 29 U. S.C. § 185. We reverse and remand.

Each of the three unions is party to individual collective bargaining agreements with the Heminger corporation, which is in the construction industry. The bricklayers' agreement requires that seventy per cent of all the employer's bricklayers must be union members, if they are available and competent. The carpenters' agreement requires that all unemployed carpenters in a four-county area in and around Canton, Ohio, be hired before any outside help is employed. The Ironworkers' agreement provides that other than a minimum of key employees, all of Heminger's ironworkers shall be furnished by the union.

The unions allege that Heminger violated each of these union security provisions by creating a sham corporation (appellee Frank Fulton, Inc.) to operate with non-union employees in the geographical areas covered by the agreements. A demand for arbitration for breach of the above provisions was made by each union on June 14, 1972. This suit was instituted after Heminger refused to arbitrate.

The bricklayers' arbitration agreement provides that the arbitration procedure will be used to settle "any disputes occurring during life of this Agreement in a peaceful manner . . ." The carpenters' arbitration agreement provides for arbitration "(i)n the event any . . . difference of opinion or dispute occurs, whether they concern the interpretation of the . . . Agreement or otherwise

. . ." The Ironworkers' arbitration agreement provides "(t)he Board of Arbitration shall have jurisdiction over all questions involving the interpretation and application of any section of this Agreement."

The District Court, in its opinion, detailed the unions' allegations concerning the creation of the sham corporation and examined the evidence on the merits of the claim. The court concluded "this court can go no further than to determine whether or not plaintiffs have made out a prima facie case based on the alter ego or single employer theory." It refused to send the matter to arbitration because "the evidence and testimony indicate a lack of sufficient common factors to illustrate a single employer or alter ego theory."

Any inquiry into the applicable law in this area must begin with the Steelworkers' Trilogy. United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S. Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The teaching of the Trilogy is that arbitration is preferred in the field of labor disputes. "An order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf, supra,* 363 U.S. at 582–583, 80 S.Ct. at 1353. *Cf.* International Union of Operating Engineers, Local 150, AFL–CIO v. Flair Builders, Inc., 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972). The role of the court in these cases "is confined to ascertaining whether the party seeking arbitration is making a claim which *on its face* is governed by the contract." *American Mfg., supra,* 363 U.S. at 568, 80 S.Ct. at 1346 (emphasis added). *See* Amalgamated Clothing Workers of America, AFL–CIO v. Ironall Factories Co., Inc., 386 F.2d 586, 591 (6th Cir. 1967). The Fifth Circuit has termed the standard to be applied the "arguably arbitrable" test. International Union of Operating Engineers Local 279 v. Sid Richardson Carbon Co., 471 F.2d 1175 (5th Cir. 1973); Jacksonville Newspaper Printing Pressmen & Assistants' Union No. 57 v. Florida Publishing Co., 468 F.2d 824 (5th Cir. 1972), cert. denied, 411 U.S. 906, 93 S.Ct. 1531, 36 L.Ed.2d 196 (1973).

We hold that the District Court misconstrued its mandate. The duty of the courts is not to determine whether a prima facie case on the merits has been put forth by the party seeking arbitration. It is not the province of the court to look into the facts of the case. Chambers v. Beaunit Corp., 404 F.2d 128, 130 (6th Cir. 1968); American Radiator & Standard Sanitary Corp. v. Local 7, International Brotherhood of Operative Potters, 358 F.2d 455, 458 (6th Cir. 1966). The arbitrator is not to be viewed as a special master who will be called in after a prima facie case on the merits has been made out.

In the context of this case, the burden of the unions was not to present a prima facie case on the creation of a sham or alter ego corporation by the employer. The burden was to show that, assuming there was a sham or alter ego corporation created by the Heminger Corp., there would then be a violation of the collective bargaining agreements. We have no doubt that such an asserted violation would be within the scope of the three arbitration agreements in question. In signing these arbitration agreements, the parties agreed to "submit all grievances to arbitration, not merely those that a court may deem to be meritorious." *American Mfg., supra,* 363 U.S. at 567, 80 S.Ct. at 1346.

Heminger has promised to arbitrate grievances concerning the application and interpretation of the collective bargaining agreement. This employer must be held to its promise.

We find inapposite two N.L.R.B. decisions relied on heavily by Heminger: Carpenters District Council of Houston & Vicinity et al. and Baxter Construction Co., Inc., 201 N.L.R.B. No. 16 (1973); and Gerace Construction, Inc. et al. v. United Brotherhood of Carpenters and Joiners of America, AFL–CIO, Local No. 1654 et al., 193 N.L.R.B. No. 91 (1971). Both of these unfair labor practice proceedings were concerned with the presence or absence of a single employer. There was no issue of arbitrability in either of those cases. We emphasize that this court is not faced with the question of whether there was a single employer. We simply decide the arbitrability of that claim.

Reversed and remanded with directions to the District Court to order arbitration between the unions and Boyd G. Heminger, Inc.

O'SULLIVAN, Senior Circuit Judge (dissenting).

I respectfully dissent. Whether a company may be ordered to submit any issue to arbitration depends upon whether it has contracted to do so. Resolution of such question *"is a matter to be determined by the Court* on the basis of the contract entered into by the parties." Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962). To hold that Fulton, Inc., is a party to a contract calling for arbitration requires, in the context of this case, a finding that it (Fulton, Inc.) is but an alter ego of Heminger, Inc., subject to whatever contracts Heminger, Inc., had made with appellant unions. Assertion that such was true and that defendants Heminger, Inc., and Fulton, Inc., together, constituted but a single employer, were the sole allegations of appellants' complaint whereby to invoke the jurisdiction of the District Court. The truth of such claims was put in issue by the answers of the defendants. It is my view that such issue presented a threshold question for resolution by the District Judge. He re-

solved it against plaintiffs-appellants. I would affirm.

The evidence before the District Judge showed that Boyd G. Heminger was the sole owner of defendant Boyd G. Heminger, Inc., a large commercial construction company doing business in the area of Canton, Ohio. He saw an opportunity to engage in the construction of residential housing, which work was then being done primarily by contractors who were not restricted by "closed shop" agreements with the plaintiff unions. His testimony was undisputed that no one could successfully compete in this activity and comply with the restrictive employment policies imposed by the building trades unions. The plaintiffs' brief to us asserts:

"Frank Fulton, Inc., was created by Boyd G. Heminger to get into the housing construction market without the restrictions and burdens of Boyd G. Heminger, Inc.'s collective bargaining agreement with the plaintiff unions."

Appellants' argument is that what Heminger sought to do was forbidden by the "closed shop" contract. I disagree. I am not persuaded that the owners and employees of a corporate enterprise having such a "closed shop" contract are thereby denied the right to establish a separate and distinct legal entity by which to carry on a legitimate business.

Plaintiffs' complaint asked that the right of the separately formed corporation—Frank Fulton, Inc.—to carry on business free of the restraints imposed by the contract between Heminger, Inc., and the plaintiff unions, be submitted to arbitration; and that pending such arbitration, Frank Fulton, Inc., be restrained from carrying on work in which it was then engaged. The case came on for hearing upon plaintiffs' application for a preliminary and permanent injunction. District Judge Leroy J. Contie, Jr., of the United States District Court for the Northern District of Ohio, Eastern Division, elected as authorized by Rule 65(a)(2), to proceed with

trial on the merits. He heard the testimony offered by the contesting parties to sustain their respective positions. He concluded:

"This court cannot find sufficient evidence to send this matter to Arbitration, as the evidence and testimony indicate a lack of sufficient common factors to illustrate a single employer or alter ego theory. Therefore, this court finds for the defendants and against the plaintiffs."

While I believe that there is nothing in the law forbidding Boyd Heminger to enter upon a new and separate enterprise, such view is not essential to my conclusion. It is true that the creation of Frank Fulton, Inc., was initially the product of Heminger's desire to get into the residential construction market.[1] However, the proofs taken before the District Judge showed, without dispute, that he did not realize this goal. He was instrumental in organizing Merit Shop, Inc., which, by change of name, became Frank Fulton, Inc. He and his wife were initially named as officers and directors of Merit Shop, Inc., but both had resigned from such positions prior to this litigation and before any operations were conducted by Frank Fulton, Inc. At the beginning, no stock was issued by Merit Shop, Inc., but Heminger did loan this skeletal corporation $5,000. This had been repaid to him before this litigation commenced. Heminger never acquired any shares of the stock ultimately issued by the new corporation. One Thomas McMahon, an employee of Heminger, Inc., subscribed and paid for the only shares issued by Frank Fulton, Inc. Shortly thereafter he resigned from his employment with the Heminger Corporation. It was undisputed that Heminger at no time had any ownership interest in the new corporation; likewise, it was undisputed that he took no part in its management or its labor relations. Frank Fulton, Inc., rented space in the office building maintained by Heminger, Inc., as well as some of Heminger's equipment. One or more supervisory employees of Heminger, Inc., did work for Fulton, Inc., at various job sites, but they did so without impairment of their duties to Heminger, Inc., and the latter billed Fulton for the services so rendered. At the time of the District Court hearing, Fulton, Inc., had some six employees; whereas, Heminger, Inc., had a payroll of 77 employees. Notwithstanding its thin capitalization, Fulton, Inc.'s initial contracts were on a cost plus basis and it was able to meet its payroll from progress payments received from the owners.

The relevant collective bargaining agreement requires that Heminger, Inc., hire only members of plaintiff unions if they were available, but no member of the plaintiff unions ever sought a job with Fulton, Inc. Fulton, Inc., did obtain one contract for the construction of a so-called Republic Steel building; Heminger, Inc., had an exclusive franchise to market such buildings in the Canton area; this construction job was subcontracted to Heminger, Inc. In proceeding, as a subcontractor, with the erection of such building, Heminger, Inc., was required to and did observe its contract with plaintiff unions. The record is void of any evidence that Heminger, Inc., lost any business to Fulton, Inc.; the jobs of none of the employees of Heminger, Inc., were lost or impaired

---

1. This set of facts is identical to those found in Gerace Construction, Inc., 193 NLRB 645 (1971), wherein the Board found that "Gerace was the prime mover in organizing Helger Construction and that he and Wardin had potential control over its operations, but such control was gradually relinquished to Sweebe who in fact had actual control over Helger's operations and employees. In these circumstances and upon the entire record, as outlined above, we find that Gerace Construction and Helger Construction constitute separate employers under the Act and that the employees of each constitute separate bargaining units."

by the formation and activities of Fulton, Inc.

My brothers believe that the question of whether Fulton, Inc., is the alter ego of Heminger, Inc., should be decided by arbitration. They emphasize the trilogy —United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed. 2d 1403 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U. S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)— the teaching of which "is that arbitration is preferred in the field of labor disputes." [2] They then go on to say:

> "The role of the court in these cases 'is confined to ascertaining whether the party seeking arbitration is making a claim which *on its face* is governed by the contract.' *American Mfg., supra,* 363 U.S. 568 [80 S.Ct. 1343]."

Respectfully, I urge that this sentence should be read in context with the one preceding it, found on page 567, 80 S.Ct. 1343, 1346 of the same decision:

> "The function of the court is very limited *when the parties have agreed* to submit all questions of contract interpretation to the arbitrator." 363 U.S. at 567–568, 80 S.Ct. at 1346 (Emphasis supplied).

Thus, whether the parties "have agreed to submit all questions of contract interpretation to the arbitrator" is a threshold question for the Court to decide. In Atkinson v. Sinclair Refining Co., *supra,*

370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), the Supreme Court said:

> "Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, *is a matter to be determined by the Court* on the basis of the contract entered into by the parties. 'The Congress . . . has by § 301 of the Labor Management Relations Act, *assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'* " 370 U.S. at 241, 82 S.Ct. at 1320 (Emphasis supplied).

Thus, the only way that Fulton, Inc., could be made a party to a contract requiring arbitration was by a finding that it was but the alter ego of Heminger, Inc. This was a threshold question which was a "matter to be determined by the Court" under *Atkinson, supra.* I do not agree with my brothers' observation that the courts have no duty to determine "whether a *prima facie case* on the merits has been put forth by the party seeking arbitration." If such were the law, then a District Court would indeed have no function in such a case as this. Plaintiffs-Appellants' complaint—as the sole basis for invoking District Court jurisdiction—charged that "defendant formed a sham-alter ego corporation, Frank Fulton, Inc." I cannot agree that plaintiffs had no duty to sustain this allegation, *even by a prima facie showing.* Here the District Judge resolved that the basic allegation of the

2. In each of the cases making up the "trilogy" the contest sought to be referred to arbitration had to do with the resolution of grievances filed by employees against their employers who had made bargaining contracts with a union of which the aggrieved employees were members. The contracts called for submission of any unresolved grievances to arbitration. Here, no employee of Heminger, Inc., has filed a grievance; no employee of Fulton, Inc., asserts an unsettled grievance; no employee of Fulton, Inc., seeks to have it enter into a bargaining agreement with any of plaintiff unions. These unions are in no way inhibited from seeking to organize Fulton's employees, using the mechanisms which they know how to handle.

complaint was not made out, even by a prima facie showing.

In Radio Union v. Broadcast Service, 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965), the Supreme Court set out the criteria whereby to determine whether one enterprise is but the alter ego of another, thus to create one integrated enterprise. The Court said:

> "The controlling criteria, set out and elaborated in Board decisions, are interrelation of operations, common management, centralized control of labor relations and common ownership." 380 U.S. at 256, 85 S.Ct. at 877 (Citing numerous Board decisions).

These criteria are missing in the case at bar. In Gerace Construction, Inc., 193 NLRB 645 (1971), the Board was dealing with the criteria needed to establish one enterprise as the alter ego of the other, thus to require both to conform to the same bargaining contract. In holding that the facts there involved did not justify a holding of an alter ego relationship, the Board said:

> "The record shows that Helger Construction is a separate legal entity with separate bank and payroll accounts. While Gerace Construction and Helger share a common bookkeeper, she keeps separate corporate records, and the two companies file separate tax returns. Francis Gerace initially controlled a majority of Helger's stock, and he and Wardin, who is an official of Gerace Construction, constituted two of Helger's three directors. However, in late November 1970, Francis Gerace resigned as a director of Helger and transferred his shares of stock to Lawrence E. Sweebe, who has been Helger's principal managerial official since its inception."

> \* \* \* \* \* \*

> "There is no showing that Gerace Construction has lost business to Helger or that any Gerace employee has

lost work he otherwise would have had. Helger's contracts amount to less than $50,000 while Gerace's are seldom less than $250,000. Unlike Gerace, Helger operates an open shop without regard to craft lines and pays employees less than Gerace's contract rates."

> \* \* \* \* \* \*

> "Gerace has an average employee complement of 95; Helger has only 16. While some Helger employees previously worked for Gerace on occasion, there is no interchange of employees. It is undisputed that Helger uses Francis Gerace's trailer for its temporary office and some tools and equipment of Gerace Construction. However, Helger pays rent for them. Moreover, the renting of tools and equipment appears to be common practice in the construction industry.

> "We find the above facts show that Francis Gerace was the prime mover in organizing Helger Construction and that he and Wardin had potential control over its operations, but such control was gradually relinquished to Sweebe who in fact had actual control over Helger's operations and employees. In these circumstances and upon the entire record, as outlined above, we find that Gerace Construction and Helger Construction constitute separate employers under the Act and that the employees of each constitute separate bargaining units. Accordingly, we find that the Respondents had no obligation to recognize the Charging Parties as bargaining representatives of Helger's employees or extend the terms of the existing agreements to such employees. We shall therefore order that the complaint be dismissed." 193 NLRB at 645–46.

Substantially to the same effect is Carpenters District Council, et al. and Baxter Construction Company, Inc., 201 NLRB No. 16 (1973). The arbitration

agreements here involved have to do with settlement of grievances and resolution of disagreements arising out of the contracts between the unions and the members of the Contractors Association [The Labor Relations Division, Building Section, of the Ohio Contractors Association, The General Contractors of America, Inc.]. Fulton, Inc., is a stranger to such Contractors Association and to the arbitration provisions contained in its contracts; but the relief here sought is to subject Fulton, Inc., to an arbitration clause to which it is not a party, and thus to have an arbitrator determine how it should conduct its future labor relations. Neither the majority opinion nor the plaintiff unions' address to us cite any authority to support such a rule. The fact that arbitration is asked does not, in my view, make Gerace Construction, Inc., *supra*, 193 NLRB 645, and Carpenters District Council, *supra*, 201 NLRB No. 16, without controlling analogy here. The District Judge correctly defined and discharged his function after hearing the relevant proofs:

"In other words, this court can go no further than to determine whether or not plaintiffs have made out a prima facie case based on the alter ego or single employer theory. It is the opinion of this court that plaintiffs have failed to do so, and that, therefore, judgment should be rendered for the defendants.

"This court heard evidence and took testimony on issues relating to the common ownership and the integrated relationship between the companies of Boyd Heminger, Inc. and Frank Fulton, Inc. The court is of the opinion that said evidence and testimony will not support a finding that the two defendants can be considered to be a single employer."

Whether the proofs made out even a prima facie case of alter ego or single employer theory, thus to make Fulton, Inc., a party to a contract containing an arbitration clause, was for resolution by the District Judge. I consider that his finding in this regard was correct.

I would affirm.