**SERVICE, HOSPITAL, NURSING HOME AND PUBLIC EMPLOYEES UNION, LOCAL NO. 47, AFFILIATED WITH the SERVICE EMPLOYEES INTERNATIONAL UNION, AFL–CIO, CLC, Plaintiff-Appellee, Cross-Appellant,**

v.

**COMMERCIAL PROPERTY SERVICES, INC., and Cleveland Cleaning & Maintenance Company, Defendants-Appellants, Cross-Appellees,**

and

**Total Systems Management, Inc., Antares, Inc., and First Union Management, Inc., Defendants, Cross-Appellees.**

**Nos. 83–3761, 83–3762 and 83–3788.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 7, 1984.

Decided Feb. 21, 1985.

Gregory P. Szuter (argued), Schwartz, Einhart & Simerka, Eugene B. Schwartz, Cleveland, Ohio, for Cleveland Cleaning and Maintenance Co.

Robert T. Rosenfeld (argued), William Gorenc, Jr., Walter, Haverfield, Buescher & Chockley, Cleveland, Ohio, for Commercial Property Services.

Melvin S. Schwarzwald (argued), Steven B. Potter, Eben O. McNair, IV, Cleveland, Ohio, for plaintiff-appellee, cross-appellant.

Keith A. Ashmus (argued), Thompson, Hine & Flory, Cleveland, Ohio, for First Union Management.

Before ENGEL and WELLFORD, Circuit Judges, and ROSENN, Senior Circuit Judge.[*]

ROSENN, Senior Circuit Judge.

The novel and underlying issue raised in these proceedings is whether a non-signatory to a collective bargaining agreement who does not stand in a successor relationship to a signatory to the agreement or to its work force can be bound by the grievance and arbitration provisions of that contract. In a suit brought by Service, Hospital, Nursing Home and Public Employees

---

[*] Honorable Max Rosenn, Senior United States Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation.

Union, Local No. 47, affiliated with the Service Employees International Union, AFL–CIO, (Local 47 or Union), under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1982), Local 47 alleged that the defendant, Commercial Property Services (CPS) through its alter ego, Cleveland Cleaning and Maintenance Co. (CCM) breached a collective bargaining agreement with Local 47. The complaint alleged that the employer violated the collective bargaining agreement by hiring non-union employees to work at several Cleveland buildings operated by First Union Management Co. (First Union). The district court granted Local 47's motion for summary judgment and ordered CPS and CCM to arbitrate. The court denied Local 47's request for injunctive relief and dismissed First Union and two companies related to CPS. We affirm in part and reverse in part.

## I.

Local 47 has been a party to a series of collective bargaining agreements with the defendant, Commercial Property Services, Inc., covering the employees engaged in the Cleveland area in janitorial and custodial work since the founding of the company in 1974. The most recent of these agreements, effective May 1, 1981, to April 30, 1984, contains three provisions that are pertinent to this proceeding. Article XI is a job security provision and requires a signatory employer who takes over an account previously serviced by another signatory employer to retain the prior employer's employees at the same wages, terms, and hours of work.[1] Article XXI defines in broad terms the scope of the agreement.

It provides, in part, that the contract covers as an employer subject to its full terms any ... corporation, firm, or any other entity which is engaged in janitorial work and is in any way a subsidiary or related entity to any Employer covered by this Agreement. Specifically and without limitation, this Agreement hereby includes any entity engaged in janitorial work which is operated in whole or in part by any officer, director or any person employed by any Employer covered by this Agreement, and further includes any entity engaged in janitorial work in which any investor in any Employer covered by this Agreement has any interest of any kind.

Finally, Article XIX requires the parties to settle any differences "as to the meaning of or application of provisions of this agreement" in a four-step process terminating in final and binding arbitration.

Local 47 also had a three-year contract with National Cleaning Contractors (National), executed in November 1982. Local 47 members employed by National cleaned and maintained two downtown Cleveland office buildings (the Rockwell properties and the Illuminating Building), which were operated by First Union Management, Inc. First Union entered into subcontracts with independent companies for janitorial and custodial services.

When the cleaning contract between National and First Union expired in 1982, First Union solicited bids from other cleaning companies. National and CPS, signatories to a master agreement with Local 47, both submitted bids which were rejected, and First Union ultimately awarded the contract to CCM, a non-union firm. Na-

---

**1.** The relevant provisions of Article XI state:
### JOB PROTECTION
**Section 1.** When an Employer takes over an account at which employees represented by the Union were previously employed, regardless of who was the Employer, the Employer shall not reduce the rate of pay, the other terms of compensation, or the number of employees and their hours of work, ... without the express written consent of the Union, unless one of the exceptions set forth in Section 2 of this Article may be applied.

\* \* \* \* \* \*

**Section 8.** If an Employer takes over an account with which Local 47 has an Agreement other than this Agreement, the Employer will sign an Assumption Agreement prior to taking over the job. All conditions such as rates of pay, hours of work, seniority, vacations, holidays, ... shall continue as they previously existed.

tional thereupon laid off the Local 47 members whom it previously had employed to clean the First Union buildings. CCM took over the janitorial and custodial services in both buildings in February 1983 with its own non-union employees.

In February 1983, Local 47 discovered that there was a close relationship between CCM and CPS. This discovery drew forth the remainder of the corporate cast in these proceedings. The principal actors are CPS and CCM, and playing a major role because of his relationship with each of them is Patrick Cassese. He and twelve other investors formed CPS, an Ohio corporation, in 1974 and Cassese operated the company and owned 49 percent of its shares. In 1978, CPS created a wholly-owned subsidiary, Total Systems Management, Inc. (TSM) to act as a consulting firm for small tenant buildings. TSM subcontracted all services to other companies, including both CPS and CCM, employed no one subject to Local 47's jurisdiction, and ceased business in 1982. In November 1982, Cassese formed Antares, Inc., a Pennsylvania corporation, for the express purpose of purchasing the shares of the other twelve investors in CPS. The district court found that Cassese owned all of the capital stock of Antares which in turn owned 100 percent of CPS.

Jack Cornachio, a nephew of Cassese, acquired the CCM business in 1976. Because of financial difficulties, Cornachio entered into an agreement in October 1982 with Cassese to sell him 70 percent of the shares but with an arrangement to retain 50 percent control. Cornachio continued as president and in control of CCM operations. Cassese's personal attorney, Robert Rosenfeld, served as one of CCM's two directors and as its secretary-treasurer. In fact, Cessese personally represented CCM in its successful negotiations with First Union, after CPS's bid had been rejected.

With the foregoing information in its possession, Local 47 launched its attack on CPS and CCM. First, it sent a letter to Cassese as president of CPS alleging that CPS violated the work preservation clause of the collective bargaining agreement with Local 47 by replacing Local 47 members with non-union employees at the two First Union buildings and at five other buildings, Lakeland Medical, Young Medical, Shaker Medical, Curtis Industries, and Diamond Shamrock. The letter informed CPS that unless it agreed to restore the former employees, Local 47 would seek injunctive relief to compel arbitration.

When CCM refused to retain the former National employees pending arbitration, Local 47 filed suit against CPS, CCM, First Union, Antares, and TSM.[2] Local 47 also filed a motion for a temporary restraining order and First Union moved to dismiss. After a hearing on Local 47's motion, the court granted First Union's motion and denied Local 47's. Local 47 then moved for summary judgment. CCM moved for partial summary judgment and Antares and TSM filed motions to dismiss.

In September 1983, the court granted Local 47's motion for summary judgment, ordering CCM and CPS to arbitrate with Local 47 the questions of whether CCM was bound by the terms of the CPS-Local 47 agreement and whether the agreement had been breached. The court dismissed Antares and TSM from the lawsuit and denied CCM's motion for partial summary judgment.

CCM and CPS appeal from the rulings granting Local 47's motion for summary judgment, and CCM appeals from the denial of its motion for partial summary judgment. Local 47 cross-appeals from the dismissal of First Union, TSM, and Antares and from the denial of injunctive relief.

---

**2.** At the same time, Local 47 filed an unfair labor practice charge with the National Labor Relations Board (NLRB) against CPS, CCM, and First Union. CPS responded by filing a petition for unit classification with the NLRB by which it sought to define the number of its employees subject to the terms of the master agreement. Local 47 also filed unfair labor practice charges with the Board charging CPS with interfering with its employees' bargaining rights and with assaulting its pickets at the Rockwell building.

## II.

■ CPS and CCM argue that the court erred in granting Local 47's motion for summary judgment and ordering them to arbitrate. They contend that before ordering arbitration, the court should have determined whether CCM was bound by the terms of the Local 47–CPS collective bargaining agreement.

In *Howard Johnson Co. v. Detroit Local Joint Executive Board,* 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974), the Supreme Court addressed a question with respect to a contract which purported to bind the successors and assigns of the employer. In that case, the former employer, the Grissoms, signed collective bargaining agreements which contained arbitration clauses and provided that the contract would be binding upon the employer's "successors, assigns, purchasers, lessees, or transferees." *Howard Johnson,* 417 U.S. at 251, 94 S.Ct. at 2238.

The Grissoms sold their business to Howard Johnson, with an agreement expressly providing that Howard Johnson with certain exceptions would *not* assume the Grissoms' obligations, including those under the labor agreements covering employees at two establishments. Howard Johnson then terminated the Grissom employees and hired its own employees, few of whom previously had worked for the Grissoms.

The Grissoms admitted that the collective bargaining agreement required that they as signatories arbitrate. Howard Johnson, however, refused to do so. The Supreme Court held that Howard Johnson could not be bound to the collective bargaining agreement between the Grissoms and the Union, absent a judicial determination of substantial continuity or identity of the work force or assumption of the agreement to arbitrate by Howard Johnson.

The mere existence of the successorship clauses in the bargaining agreements between the unions and the Grissoms, however, cannot bind Howard Johnson either to the substantive terms of the agreements or to the arbitration clauses thereof, absent the continuity required by *Wiley,* when it is perfectly clear the Company refused to assume any obligations under the agreements.

*Id.* at 258, n. 3, 94 S.Ct. at 2241, n. 3.

The Court distinguished its previous decision in *John Wiley and Sons v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), in which a successor corporation was ordered to arbitrate pursuant to a collective bargaining agreement signed by its predecessor, with whom it had merged. The Court noted that the successor was properly ordered to arbitrate in *Wiley* where the predecessor employer entity had "completely disappeared" as the result of a merger. Unless the union were afforded some remedy against the successor, it would have no means of enforcing those obligations voluntarily undertaken by the merged corporation which were intended to survive a change in ownership. *Howard Johnson,* 417 U.S. at 257, 94 S.Ct. at 2240. The hiring in *Wiley* by the surviving corporation of *all* of the employees of the predecessor corporation also weighed heavily in the *Howard Johnson* decision. The grievances which the union sought to compel Wiley to arbitrate were the claims of Wiley's own employees. In *Howard Johnson,* by contrast, the union sought arbitration on behalf of the former Grissom employees who were *not* hired by Howard Johnson. *Id.* at 258–60, 94 S.Ct. at 2241–42.

What Local 47 seeks to do here is very similar to what the union sought in *Howard Johnson,* and the result must be the same. In this case, the signatory employer, CPS, continues as a viable entity with which the Union may bargain and arbitrate.[3] Therefore, if CCM is not ordered to arbitrate, the Union is not left without a remedy.

---

**3.** The district court found that approximately 2000 people are now engaged in janitorial and security guard work for CPS in Cleveland and Columbus, and in various cities in Pennsylvania, Colorado, and Texas. *Service, Hospital, Nursing*

*Home and Public Employees Union, Local No. 47 v. Commercial Property Services, Inc.,* No. C83–588 (N.D.Ohio Feb. 25, 1983) (order denying motion for temporary restraining order and dismissing First Union).

Furthermore, the employees Local 47 seeks to protect are not and were not CCM's employees, but rather National employees. National laid them off when First Union awarded the contract to CCM. In this case, as in *Howard Johnson,* there is no continuity or identity of CCM's work force with National's work force. Therefore, the court may not order CCM to arbitrate, absent a finding that CCM and CPS are alter egos, or that the two constitute a single employer, or without otherwise determining that the situation is appropriate for piercing the corporate veil. *See American Bell, Inc. v. Federation of Telephone Workers,* 736 F.2d 879, 886–89 (3d Cir. 1984).[4]

The leading Sixth Circuit case in this area is not to the contrary. In *Local 6, Bricklayers International Union v. Boyd G. Heminger, Inc.,* 483 F.2d 129 (6th Cir. 1973), three unions charged that Heminger violated the union security and arbitration clauses of their collective bargaining agreement by hiring non-union employees through its "sham" corporation, Frank Fulton, Inc. The district court refused to refer the matter to arbitration because "the evidence and testimony indicate[d] a lack of sufficient common factors to illustrate a single employer or alter ego theory." *Id.* at 131.

The unions sought a remand with regard to Heminger only. This court reversed, holding that "[I]n signing these arbitration agreements the parties agreed to 'submit all grievances to arbitration, not merely those a court may deem to be meritorious.'" *Id.* at 131, *quoting United Steelworkers v. American Manufacturing, Inc.,* 363 U.S. 564, 567, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960). The court therefore ordered Heminger to arbitrate the dispute according to the arbitration agreement which it had signed; it held Heminger to its promise to arbitrate grievances. The court, however, did not order Fulton, the non-signatory subsidiary, to arbitrate the dispute.

Consistent with *Heminger,* the district court in the case at bar did not err in ordering CPS to arbitrate, for CPS, like Heminger, was a signatory to the collective bargaining agreement CPS must keep its promise to the Union to arbitrate grievances under the contract. However, we hold that a district court may not order a non-signatory to arbitrate a labor dispute, absent a specific finding that the relationship between it and the party bound to the agreement is such that it too is bound to arbitrate. *See also General Drivers, Local Union No. 89 v. Public Service Co. of Indiana,* 705 F.2d 238, 241 (7th Cir.1983). We therefore vacate the order of the district court and remand the case to it for a determination of whether the facts warrant a finding that CCM and CPS are alter egos, or constitute a single employer or whether the corporate veil should otherwise be pierced. *See American Bell,* 736 F.2d at 886–89.[5]

---

**4.** The *Howard Johnson* court emphasized that "this is not a case where the successor corporation is the 'alter ego' of the predecessor ...." 417 U.S. at 259, n. 5, 94 S.Ct. at 2242, n. 5.

**5.** CPS and CCM also contend that they may not be compelled to arbitrate without a determination by the National Labor Relations Board of the appropriate bargaining unit. The threshold question of whether CCM is bound by the CPS–Local 47 collective bargaining agreement does not require the determination of an appropriate bargaining unit. The matter would only warrant a submission to the Board if the district court found that CCM was bound by the collective bargaining agreement and if the arbitrator found that the agreement had been breached.

Counsel for CPS has brought to our attention the recent decision of this court in *Aquabrom,* *Division of Great Lakes Chemical Corp. v. NLRB,* 746 F.2d 334 (6th Cir.1984). That case, however, arose in a different procedural context from the case at bar, and is therefore distinguishable. *Aquabrom* involved a Board order upholding a representation election and ordering Drug Research, Inc., its successors and assigns to bargain with the union. Aquabrom refused to do so on the grounds that it was not a successor to Drug Research, and the Board sued for contempt. This court held that, in that context, it was up to the Board, rather than the Special Master appointed by the district court, to determine whether Aquabrom would be bound by the Board's order. *Aquabrom* involved the question of whether a successor would be held liable for the unfair labor practices of its predecessor, and the concerns for procedural safeguards and deferral to agency

## III.

In the prayer of their amended complaint, Local 47 sought *inter alia*, to enjoin all the defendants from: "discharging the employees currently performing janitorial work" at the Rockwell and the Illuminating Buildings; "changing any of the wages, hours, or the terms and conditions of employment of said employees," and directing the reinstatement of the employees discharged.

The district court denied injunctive relief on the ground that Local 47 failed to establish irreparable harm as a result of CCM's actions. On appeal, Local 47 argues "that all [it] seeks is the reinstatement of employees it has represented for many years to the locations where CCM has taken that work away." Brief for Local 47 In Answer to Brief of CPS at 16.

In *Aluminum Workers International Union, Local 215 v. Consolidated Aluminum Corp.*, 696 F.2d 437, 441–444 (6th Cir.1982), this court considered the narrow exception to the anti-injunction policy of our national labor laws announced in *Boys Markets v. Retail Clerks Union*, 398 U.S. 235, 254, 90 S.Ct. 1583, 1594, 26 L.Ed.2d 199 (1970).[6] It noted that the courts have extended this exception "to embrace employer behavior which has the effect of evading a duty to arbitrate or which would otherwise undermine the integrity of the arbitral process." *Aluminum Workers*, 696 F.2d at 441.

To obtain an injunction under *Aluminum Workers*, the Union must establish that the "underlying grievance is one which the parties are contractually bound to arbitrate" and must "satisfy the court that injunctive relief is warranted under 'ordinary principles of equity.'" *Id.* at 442, *quoting Boys Markets v. Retail Clerks Union*, 398 U.S. at 254, 90 S.Ct. at 1594.

In the instant case, the Union did not establish that the underlying grievance is one which CCM was bound to arbitrate. The district court could not have enjoined CCM, the non-signatory, without first determining that CCM was bound by the arbitration agreement. We therefore hold that absent a judicial determination that two corporations are alter egos or a singular employer, a court may not enjoin a non-signatory to an arbitration agreement from hiring non-union employees. Furthermore, on this record it appears that the Union employees at the Rockwell and Illuminating Buildings were never hired nor discharged by CPS, CCM or the other defendants. Thus, the district court did not err in denying Local 47's motion for injunctive relief directing their reinstatement.

## IV.

Local 47 also contends that the district court erred in granting First Union's motion to dismiss. The court dismissed First Union on the ground that the court lacked subject matter jurisdiction under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1982). This court has stated in *Metropolitan Detroit Bricklayers District Council v. J.E. Hoetger & Co.*, 672 F.2d 580, 583 (6th Cir.1982): "We recognize that courts have generally held that this section [section 301] creates federal jurisdiction only over parties to the contract being sued upon." Local 47 argues that the court had jurisdiction over First Union, even though First Union was a non-signatory to the Local 47–CPS collective bargaining agreement. The Union bases its argument on *Smith v. Evening News Association*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), which held that a suit to vindicate an individual employee's rights arising under a collective bargaining agreement may be brought under section 301, even though the union, not the individual, is signatory to the agreement.

---

expertise were more pressing than in the essentially contractual dispute at bar.

**6.** In *Boys Markets,* the Court carved out an exception to the narrow strictures of section 4 of the Norris-LaGuardia Anti-Injunction Act, 29

U.S.C. § 104 (1982), by holding that when the underlying dispute is one over which the parties have agreed to arbitrate and ordinary equitable norms for relief have been met, a court may enjoin a strike in violation of a no-strike clause.

The holding in *Evening News* has been extended by this court to include suits brought by third-party beneficiaries of collective bargaining agreements, *Hazen v. Western Union Telegraph Co.*, 518 F.2d 766 (6th Cir.1975) (suit brought by widow of union member), and to suits brought by non-signatory employees who claimed that their rights were protected by collective bargaining agreements, *Hill v. Iron Workers Local 25*, 520 F.2d 40 (6th Cir.1975) (suit brought by non-union member alleging he was protected by provisions of collective bargaining agreement). In the case at bar, neither the rights of First Union are in any way protected nor are its duties set forth in the provisions of the Local 47–CPS collective bargaining agreement.

The Union relies heavily on *Wilkes-Barre Publishing Co. v. Newspaper Guild of Wilkes-Barre, Local 120*, 647 F.2d 372 (3d Cir.1981), *cert. denied*, 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982) and *Painting and Decorating Contractors Ass'n of Sacramento v. Painters and Decorators Joint Committee of the East Bay Counties, Inc.*, 707 F.2d 1067 (9th Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1709, 80 L.Ed.2d 182 (1984), in support of its broad contention that section 301 subject matter jurisdiction exists over *all* suits for violation of collective bargaining agreements.[7] The majority of courts, however, continue to apply a much narrower interpretation of the scope of section 301 jurisdiction. *See Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 502 (5th Cir.1982), *cert. denied*, —— U.S. ——, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983); *Loss v. Blankenship*, 673 F.2d 942, 946 (7th Cir.1982); *Bowers v. Ulpiano Casal, Inc.*, 393 F.2d 421, 423 (1st Cir.1968); *Fox v. Mitchell Transport, Inc.*, 506 F. Supp. 1346, 1349 (D.Md.), *aff'd mem.*, 671 F.2d 498 (4th Cir.1981).

We therefore hold that a district court does not have subject matter jurisdiction over a non-signatory to a collective bargaining agreement, where no rights or duties of the non-signatory party are stated in the terms and conditions of the contract.[8]

■ First Union originally moved to dismiss solely on the grounds that the court lacked subject matter jurisdiction over it under section 301. Local 47 then amended its complaint to include a pendent state law claim for tortious interference with contractual rights. Dismissal of this pendent claim was required once the federal claim was dismissed. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Kurz v. Michigan*, 548 F.2d 172, 175 (6th Cir.), *cert. denied*, 434 U.S. 972, 98 S.Ct. 526, 54 L.Ed.2d 462 (1977); *Gibson v. First Federal Savings and Loan Ass'n of Detroit*, 504 F.2d 826, 830–31 (6th Cir.1974).[9] Thus, the district court erred in dismissing Local 47's state law claim on the merits. It should have dismissed the claim without prejudice for want of jurisdiction.

---

**7.** Even in *Wilkes-Barre Publishing* and *Painting and Decorating Contractors,* there were close relationships between the parties and the signatories of the collective bargaining agreements. In *Wilkes-Barre,* the non-signatory party was a co-venturer in an enterprise which allegedly breached the collective bargaining agreement, and in *Painting and Decorating Contractors,* the non-signatory party was a non-profit corporation which consisted of representatives from the signatory employer associations and union. In the instant case, the connection between First Union and the collective bargaining agreement is tenuous: First Union has an agreement with an independent contractor, CCM, and CCM is allegedly an alter ego of CPS, a signatory to the agreement.

**8.** Local 47 also argues that the court erred in granting First Union's motion to dismiss solely on the basis of evidence presented at the hearing on Local 47's motion for a temporary restraining order. Because we conclude that the court lacked subject matter jurisdiction over the claims against First Union, we do not reach this issue.

**9.** This circuit has moved away from the position that the court has discretion to retain jurisdiction over a pendent state claim where the federal claim has been dismissed before trial. *Compare Kurz v. Michigan*, 548 F.2d at 175, and *Gibson v. First Federal Savings and Loan Ass'n of Detroit*, 504 F.2d at 830–31, with *Gray v. International Ass'n of Heat & Frost Insulators, Local No. 51*, 447 F.2d 1118, 1120 (6th Cir.1971).

## V.

■ Local 47 also objects to the dismissal of TSM and Antares from the suit. It contends that the court should have ordered these corporations to arbitrate in order to "fully develop" the relationships among TSM, Antares, CCM, and CPS. As we held earlier in this opinion, a non-signatory to a collective bargaining agreement cannot be bound to its arbitration clause unless the court determines that the corporate veil between the non-signatory and signatory corporations may be pierced or that the corporations constitute a single employer. Moreover, in the instant case, Local 47 has never alleged that TSM or Antares violated the terms of the collective bargaining agreement. Furthermore, these corporations, as we have suggested, never hired nor discharged any of the employees whom Local 47 now seeks to reinstate. Therefore, the district court committed no error in dismissing the claims against TSM and Antares.

## VI.

■ Finally, CCM asserts that the court erred in denying its motion for partial summary judgment. According to CCM, the record demonstrates that there are no material facts in dispute with regard to the single employer-alter ego issue and that judgment should have been entered for CCM as a matter of law. CCM's argument is based on its contention that the district court should have made a determination on the single employer-alter ego issue. Had the court done so, according to CCM, it would have concluded that the facts as presented at the hearing and alleged by the parties could not support a finding that CPS and CCM were alter egos or constituted a single employer.[10]

Local 47 argued in response to CCM's motion for summary judgment that discovery has not been completed and that a determination by the court on the alter ego-single employer issue would be premature until further evidence has been presented. We agree. Local 47 has not yet had the opportunity to present the evidentiary support for its position that CPS and CCM constitute a single employer or are alter egos.[11] Under the circumstances, and because we remand the case to the district court for a full determination of this question, we conclude that the district court did not err in denying CCM's motion for partial summary judgment on this issue.

## VII.

To recapitulate, we hold that the district court erred in ordering CCM to arbitrate under a collective bargaining agreement to which it was a non-signatory, and we remand for a determination of whether CCM and CPS constitute a single employer or alter egos, or whether the relationship between them is such that piercing the corporate veil separating them would be appropriate. We also conclude that the district court had no jurisdiction to entertain the merits of the state law claim against First Union. In all other respects, the judgment of the district court is affirmed.

In the appeal of CCM, No. 83–3761, each side will bear its own costs. In the appeal of CPS, No. 83–3762, costs are taxed against the appellants. In the cross-appeal of Local 47, No. 83–3788, costs are taxed against the cross-appellant.

---

10. On appeal, CCM has apparently dropped its argument that the court lacks subject matter jurisdiction under section 301 because CCM was a non-signatory to the collective bargaining agreement.

11. Local 47's motion for summary judgment and its response to CCM's motion focused almost exclusively on the argument that the alter ego-single employer issue should be determined by the arbitrator rather than by the court.