922 F.2d 332
 William R. HENRY, Plaintiff-Appellant,
Dixie L. Sprouse; William Tommy Vaughn; Stephen Milliner;
Edward Baker; Bessie Mae Marsh; Donald Ray Long; Charles
T. King, Sr.; Jesse L. Waldon, IV; Ernest Gaither;
Michael D. Richard, Sr.; Johnney Lee Foster; David Hayes;
and Ronald J. Harris, Plaintiffs,
v.
METROPOLITAN SEWER DISTRICT; Gordon Garner, Executive
Director, MSD; Mike Crawford, Personally and in his
Official Capacity; Ron Crawford, Personally and in his
Official Capacity; Green & Associates, a Sole
Proprietorship; Mel Green; Bonnie Wright; and Al Beck,
Defendants-Appellees.
 No. 89-6521.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 21, 1990.
Decided Dec. 27, 1990.
 
 Kenneth L. Sales (argued), Segal, Isenburg, Sales, Stewart & Cutler, Louisville, Ky., for plaintiffs-appellants.
 Frank G. Simpson, III, Laurence J. Zielke (argued), Michael W. Lowe, and Gerald M. Woodcox, Pedley, Ross, Zielke, Gordinier & Porter, Louisville, Ky., for defendants-appellees.
 Before JONES and GUY, Circuit Judges, and PECK, Senior Circuit Judge.
 RALPH B. GUY, JR., Circuit Judge.
 
 
 1
 In this action under 42 U.S.C. Sec. 1983 to redress alleged deprivations of due process, equal protection, and privacy rights, the district court dismissed without prejudice plaintiff William Henry's claim against a Kentucky agency and several of its officers in their official capacities upon finding the claim barred by the eleventh amendment. Additionally, the district court granted summary judgment for the defendants in their individual capacities based upon the doctrine of qualified immunity. On appeal, the plaintiff contends that the district court erred in dismissing the official capacity claim without prejudice instead of remanding it to the state court from which it was removed. The plaintiff further asserts that, in light of the eleventh amendment bar to the official capacity claim, the district court lacked jurisdiction to address the merits of the individual capacity claim. Finally, the plaintiff argues that the district court utilized an improper qualified immunity standard in resolving the various aspects of the individual capacity claim on the merits. We find that the proper method for resolving the official capacity claim under the eleventh amendment should have involved remand instead of dismissal without prejudice. We reject the plaintiff's argument that the district court lacked jurisdiction to address the merits of the individual capacity claim. We further conclude that the district court did not err in applying the doctrine of qualified immunity to support summary judgment for the defendants on the right to privacy, due process, and equal protection components of the individual capacity claim under section 1983.
 
 I.
 
 2
 In May of 1985, defendant Gordon Garner became the executive director of the Louisville and Jefferson County Metropolitan Sewer District (MSD), a Kentucky agency responsible for building and supervising solid waste disposal facilities. See Ky.Rev.Stat.Ann. Secs. 76.010-76.210 (Baldwin 1987). Acting on information that various MSD employees were involved in illicit drug activity, Garner met with Michael Crawford, the MSD personnel director, and Ron Crawford, a member of the MSD legal department. At this meeting, Garner decided to hire a private firm to investigate suspected drug use in the MSD maintenance yard workforce. By August of 1985, Garner had authorized the hiring of defendant Green & Associates, a private investigation firm.
 
 
 3
 Defendant Mel Green of Green & Associates dispatched two undercover agents, defendants Bonnie Wright and Al Beck, to MSD in September of 1985. Wright and Beck were processed through normal MSD hiring channels, placed on the MSD payroll, assigned to work crews along with various MSD employees, and instructed to socialize with MSD employees during and after work. In a matter of weeks, Wright and Beck began smoking marijuana and drinking regularly with MSD employees. Wright and Beck also bought marijuana from MSD employees and provided them with drugs and alcohol. As Wright and Beck developed information regarding drug use by MSD employees, they relayed this information to Green, who passed it on to Garner, who in turn informed the safety director for the City of Louisville and the Louisville chief of police. The safety director referred Garner to an officer in the Narcotics Division of the Louisville Police Department, and the chief of police offered his cooperation in the investigation. Consequently, Green began furnishing materials to the Louisville Police Department for processing at the Kentucky State Police crime laboratory.
 
 
 4
 A November 1985 meeting involving Garner, Green, Michael Crawford, and two Louisville police officers resulted in the decision to continue the investigation in order to gather more evidence of drug use by MSD employees. When the investigation ended in January of 1986, MSD instituted disciplinary proceedings against 26 employees, and the Louisville Police Department arrested six employees, including plaintiff Henry. Henry was charged under Kentucky law with trafficking in marijuana but not convicted. Henry was subsequently discharged by MSD, and the sanction was sustained following an arbitration hearing.
 
 
 5
 In response to his arrest and discharge, the plaintiff filed suit in the Jefferson County Circuit Court alleging violations of both federal and state law. The defendants removed the action, and the plaintiff (along with various former co-workers) then filed an amended complaint against Garner, Michael Crawford, and Ron Crawford in their official and individual capacities, as well as the MSD, Green & Associates, Mel Green, Wright, and Beck. The four-count amended complaint set forth federal claims under 42 U.S.C. Sec. 1983 and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Secs. 1961-1968, in addition to state claims for abuse of process and failure to comply with the Kentucky Open Records Act, Ky.Rev.Stat.Ann. Secs. 61.870--61.884 (Baldwin 1989).[1]
 
 
 6
 The defendants moved for dismissal or, alternatively, summary judgment in September of 1988, and the district court issued a memorandum opinion and order in November of 1989 granting the motion. The district court held that the section 1983 and RICO claims against the MSD and its officers in their official capacities were barred by the eleventh amendment. The district court further ruled that qualified immunity insulated the defendants from liability in their individual capacities with respect to the right to privacy, due process, and equal protection components of the section 1983 claim. Finding no basis for liability under RICO, the court granted summary judgment for all of the defendants on that claim. Finally, the district court "remand[ed] to the State Court the pendent state claim of abuse of process."[2] This appeal followed.
 
 
 7
 The plaintiff has abandoned his RICO claim on appeal, and has focused his argument upon the district court's disposition of the section 1983 claim. With regard to the official capacity claim under section 1983, the plaintiff does not challenge the district court's determination that the eleventh amendment bars such a claim. Instead, the plaintiff asserts that the district court should have remanded the official capacity claim rather than dismissing it without prejudice. The plaintiff's second contention addresses the district court's subject matter jurisdiction: the plaintiff insists that the eleventh amendment bar rendered removal improvident, and therefore divested the district court of jurisdiction to address the merits of the section 1983 claim against the defendants in their individual capacities. The plaintiff's final argument, which presumes that the district court had jurisdiction to consider the section 1983 individual capacity claim, is directed at the district court's application of qualified immunity to grant summary judgment in favor of the defendants.[3] We shall consider these three arguments seriatim.II.
 
 The eleventh amendment provides that:
 
 8
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of Any Foreign State.
 
 
 9
 Despite the textual reference to suits brought against a state by "Citizens of another State," the Supreme Court "long ago held that the [Eleventh] Amendment bars suits against a State by citizens of that same State as well." Papasan v. Allain, 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986) (citing Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)); see also Welch v. Texas Dep't of Highways and Pub. Transp., 483 U.S. 468, 478-88, 107 S.Ct. 2941, 2948-54, 97 L.Ed.2d 389 (1987) (reaffirming Hans ). Moreover, although the protection of the eleventh amendment "does not extend to counties and similar municipal corporations[,]" Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280, 97 S.Ct. 568, 572-73, 50 L.Ed.2d 471 (1977), the Court has observed that "some agencies exercising state power have been permitted to invoke the [Eleventh] Amendment in order to protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the State itself." Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 400-01, 99 S.Ct. 1171, 1176-77, 59 L.Ed.2d 401 (1979) (footnote omitted); accord Estate of Ritter v. University of Michigan, 851 F.2d 846, 850-51 (6th Cir.1988). Likewise, "[r]elief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant." Papasan, 478 U.S. at 278, 106 S.Ct. at 2940. While the reach of the eleventh amendment has thus essentially been settled by the Supreme Court, the nature of the amendment has been the subject of seemingly inconsistent Court pronouncements.
 
 
 10
 In Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Court stated that "the Eleventh Amendment defense ... partakes of the nature of a jurisdictional bar...." Id. at 678, 94 S.Ct. at 1363. As a "jurisdictional bar," the eleventh amendment may be interposed as a defense at any juncture, even on appeal when not raised in the trial court. See id.; but cf. Patsy v. Board of Regents of the State of Florida, 457 U.S. 496, 516 n. 19, 102 S.Ct. 2557, 2567 n. 19, 73 L.Ed.2d 172 (1982) ("[W]e have never held that [the eleventh amendment] is jurisdictional in the sense that it must be raised and decided by this Court on its own motion."). However, the Court later commented that the eleventh amendment's "significance lies in its affirmation that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art[icle] III." Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984) (Pennhurst II ). Significantly, the Court in Pennhurst II noted that "[a] sovereign's immunity may be waived, and the Court consistently has held that a State may consent to suit against it in federal court." Id. at 99, 104 S.Ct. at 907; see also Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). Nevertheless, the Pennhurst II Court's decision ultimately conceptualized the eleventh amendment as erecting an insurmountable (albeit waivable) jurisdictional bar in holding that "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment." Pennhurst II, 465 U.S. at 121, 104 S.Ct. at 919 (footnote omitted); see also County of Oneida v. Oneida Indian Nation, 470 U.S. 226, 251, 105 S.Ct. 1245, 1260, 84 L.Ed.2d 169 (1985). This view of the eleventh amendment as jurisdictional yet waivable has prevailed in recent Supreme Court decisions, see, e.g., Atascadero State Hosp., 473 U.S. at 241, 105 S.Ct. at 3146 (eleventh amendment analysis involves "determining whether a State has waived its immunity from federal-court jurisdiction"), and decisions of this court. See, e.g., Allinder v. State of Ohio, 808 F.2d 1180, 1184 (6th Cir.), appeal dismissed, 481 U.S. 1065, 107 S.Ct. 2455, 95 L.Ed.2d 865 (1987). Here, as the plaintiff concedes, the eleventh amendment prevents us from addressing the merits of his section 1983 claim against the MSD and its officers in their official capacities.[4] Cf. Quern v. Jordan, 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979) (section 1983 claims may be precluded by the eleventh amendment).
 
 
 11
 The Supreme Court's decision in Alabama v. Pugh, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), not only confirmed that states may waive the protection of the eleventh amendment, but also revealed another uncommon aspect of the eleventh amendment's jurisdictional bar. In Pugh, Alabama prison inmates sued the State of Alabama, the Alabama Board of Corrections, and various state officials. After noting that "suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit[,]" id. at 782, 98 S.Ct. at 3057, the Court dismissed the plaintiffs' claims against the State of Alabama and the Board of Corrections, yet left intact the judgment against the state officials (presumably in their individual capacities). See id. In Pennhurst II, the Supreme Court offered insight into the result reached in Pugh by stating that "[a] federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." Pennhurst II, 465 U.S. at 121, 104 S.Ct. at 919 (emphasis added). Pursuant to Pugh and Pennhurst II, therefore, the eleventh amendment apparently presents a jurisdictional bar to claims, not to entire cases which involve claims implicating the eleventh amendment. With these principles in mind, we must consider the jurisdictional arguments raised by the plaintiff in this case.
 
 
 12
 A. Dismissal Without Prejudice in Lieu of Remand
 
 
 13
 In Gwinn Area Community Schools v. State of Michigan, 741 F.2d 840 (6th Cir.1984), we considered a suit against federal and state defendants involving claims under federal and state law that had been removed from a Michigan circuit court to the United States District Court for the Western District of Michigan. We affirmed the district court's dismissal of the claims against the federal defendants based upon the plaintiffs' failure to exhaust administrative remedies. See id. at 843-44. We then considered and rejected the plaintiffs' federal law claims against the state defendants on the merits, thereby approving the district court's exercise of jurisdiction over that aspect of the case. See id. at 844-46. Finally, we addressed the argument that the eleventh amendment barred adjudication of the plaintiffs' state law claims. See id. at 846-47. After finding that the state defendants had not waived the protection of the eleventh amendment, see id., we concluded that the eleventh amendment, in fact, prevented resolution of the state law claims against the state defendants on the merits. See id. at 847.
 
 
 14
 "Having concluded that the federal [district] court was barred by the Eleventh Amendment from entertaining the claims against the state defendants based on alleged violations of the state constitution," we considered "the proper disposition of those claims." See id. We offered the following observations in this regard:
 
 
 15
 The choices are dismissal without prejudice and remand to the state circuit court from which this case was removed. After due consideration we have determined that the proper course is to direct the district court to remand these claims to the state court. In doing so we adopt the procedure most often followed when only pendent state claims remain in removed cases which originally had both federal and state claims.
 
 
 16
 Id. (emphasis added). The official capacity defendants, including the MSD, argue that Gwinn is distinguishable from this case in that Gwinn involved pendent state claims whereas federal section 1983 claims are involved here. We find this distinction insignificant.
 
 
 17
 In both Gwinn and this case, the eleventh amendment precluded resolution on the merits of the claims at issue. Thus, the nature of the impediment that left some claims unresolved in Gwinn and in this case is identical. The Supreme Court has emphatically stated that "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment." Pennhurst II, 465 U.S. at 121, 104 S.Ct. at 919 (footnote omitted). Thus, in Estate of Ritter, we determined that the eleventh amendment provided an insurmountable bar to jurisdiction over the plaintiff's section 1983 claims, and we accordingly approved the remand of the federal claims to the state court from which they were removed. See Estate of Ritter, 851 F.2d at 852. As Gwinn and Estate of Ritter illustrate, state and federal claims barred by the eleventh amendment are identical for purposes of the limitation upon federal jurisdiction imposed by the eleventh amendment. Therefore, the treatment of the official capacity section 1983 claim asserted by plaintiff Henry is controlled by Gwinn. The dismissal without prejudice of the unresolved official capacity claim is REVERSED, and the claim is REMANDED to the district court with instructions to remand the unresolved claim to the Jefferson County Circuit Court for consideration on the merits.
 
 
 18
 B. Jurisdiction Over Individual Capacity Claims
 
 
 19
 Before addressing the merits of the plaintiff's section 1983 claim against the defendants in their individual capacities, the district court tersely stated that the eleventh amendment presents no bar to consideration of the individual capacity claim. This proposition is expressly confirmed by the Supreme Court's unanimous decision in Scheuer v. Rhodes, 416 U.S. 232, 237-38, 94 S.Ct. 1683, 1686-87, 40 L.Ed.2d 90 (1974). See also Papasan, 478 U.S. at 278 n. 11, 106 S.Ct. at 2940 n. 11. Nevertheless, plaintiff Henry contends that the jurisdictional bar of the eleventh amendment applicable to the official capacity claim stripped the district court of jurisdiction, thereby rendering removal improvident and requiring remand of the entire case to the Jefferson County Circuit Court. While we recognize that 28 U.S.C. Sec. 1447(c) prescribes remand whenever "the district court lacks subject matter jurisdiction," we find that the eleventh amendment's jurisdictional bar did not divest the district court of subject matter jurisdiction over the plaintiff's individual capacity claim.
 
 
 20
 As the Supreme Court has repeatedly indicated, the atypical jurisdictional bar of the eleventh amendment concerns individual claims, not entire cases. See, e.g., Pennhurst II, 465 U.S. at 121, 104 S.Ct. at 919 ("A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment."). Accordingly, both the Supreme Court and the United States courts of appeals have addressed the merits of claims unaffected by the eleventh amendment despite the presence of barred claims. See, e.g., Pugh, 438 U.S. at 782, 98 S.Ct. at 3057-58; Roberts v. College of the Desert, 870 F.2d 1411, 1415 (9th Cir.1988) ("Even if the College is shielded from suit by the state's sovereign immunity, we have jurisdiction to consider the merits of Roberts' appeal because she could still recover from the individual defendants in their individual capacity."). In addressing the merits of section 1983 claims against individual capacity defendants despite holding that a similar claim against a state entity was barred by the eleventh amendment, we have implicitly recognized that the inclusion of a claim barred by the eleventh amendment does not divest the district court of jurisdiction over individual capacity claims upon removal. See Cowan v. University of Louisville School of Medicine, 900 F.2d 936, 940-43 (6th Cir.1990).
 
 
 21
 The plaintiff, citing McKay v. Boyd Construction Co., 769 F.2d 1084 (5th Cir.1985), argues that the eleventh amendment bar applicable to official capacity claims requires remand under 28 U.S.C. Sec. 1447(c) of removed cases which include both official and individual capacity claims. In McKay, a Wisconsin resident filed suit in state court against a Mississippi corporation named Boyd Construction Company and a state entity. Following removal, the district court dismissed the claims against the state entity and granted summary judgment for the private corporation. The Fifth Circuit vacated the judgment and "remanded [the entire case] to the district court with directions to remand it to the state court from which it was improvidently removed pursuant to 28 U.S.C. Sec. 1447(c)[,]" id. at 1088, reasoning that the suit did not "fall within the limited jurisdiction of the district court." Id. at 1086. The McKay court offered the following rationale for its action:
 
 
 22
 McKay's suit was removed from the state court upon motion by Boyd pursuant to 28 U.S.C. Sec. 1441. This section only authorizes the removal of actions that are within the original jurisdiction of the district court. Because a state agency is a defendant, the eleventh amendment bars the exercise of federal jurisdiction here. Accordingly, the action must be remanded to the state court where it was originally filed.
 
 
 23
 Id. To the extent that McKay forecloses consideration of claims unaffected by the eleventh amendment in favor of remand pursuant to 28 U.S.C. Sec. 1447(c), we reject its analysis as fundamentally incompatible with Pugh and Pennhurst II. Section 1447(c) states that "if the district court lacks subject matter jurisdiction, the case shall be remanded." Here, the section 1983 individual capacity claim was properly before the district court for consideration as a matter of federal question jurisdiction notwithstanding the eleventh amendment bar to resolution of the official capacity claim on the merits. Cf. Pennhurst II, 465 U.S. at 121, 104 S.Ct. at 919; Pugh, 438 U.S. at 782, 98 S.Ct. at 3057-58. Thus, the district court acted properly in addressing, rather than remanding, the individual capacity claim.
 
 III.
 
 24
 The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Supreme Court has explained that "[t]he contours of the right" allegedly violated "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Moreover, "[t]he relevant inquiry focuses on whether a reasonable official in the defendant's position could have believed his conduct to be lawful, considering the state of the law as it existed when the defendant took his challenged actions." Poe v. Haydon, 853 F.2d 418, 423-24 (6th Cir.1988), cert. denied, 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989). Because "[t]he question of whether qualified immunity attaches to an official's actions is a purely legal question[,]" Garvie v. Jackson, 845 F.2d 647, 649 (6th Cir.1988), we must review the district court's application of qualified immunity in this case de novo. See Eugene D. v. Karman, 889 F.2d 701, 706 (6th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 2631, 110 L.Ed.2d 651 (1990).A. Right to Privacy
 
 
 25
 In Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), the Supreme Court sketched the contours of the constitutional right to privacy:
 
 
 26
 The cases sometimes characterized as protecting "privacy" have in fact involved at least two different kinds of interests. One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.
 
 
 27
 Id. at 598-600, 97 S.Ct. at 875-877 (footnotes omitted). Although the plaintiff has not articulated the theoretical basis for his section 1983 right to privacy claim, we can glean from his pleadings and briefs the view that the undercover investigation and subsequent dissemination of discovered information to his employer and to law enforcement officials constituted an impermissible disclosure of personal matters, rather than an encroachment upon his independence in making some important decision. The proscription of disclosure encompassed by the right to privacy remains, to this day, relatively amorphous. See, e.g., Borucki v. Ryan, 827 F.2d 836, 840-42 (1st Cir.1987). This fact, by itself, makes us wary of the plaintiff's contention that his vaguely-defined right to privacy was "clearly established" in 1985 for purposes of qualified immunity. The district court's ruling with respect to the privacy claim, however, finds more direct support from a decision of this court.
 
 
 28
 We considered a constitutional claim in Gordon v. Warren Consolidated Board of Education, 706 F.2d 778 (6th Cir.1983), arising from covert surveillance at a Michigan high school. In Gordon, "school officials sought and helped place an undercover policewoman in two classes at Cousino High School. The articulated purpose of the covert operation was to reduce drug trafficking in the school." Id. at 778. The covert operation in Gordon turned up no evidence of drug sales at the high school, and the undercover agent in Gordon admitted that she was specifically assigned to particular classrooms "because they contained 'liberal students and teachers.' " See id. at 779. Nevertheless, we rejected section 1983 claims brought by students, teachers, and parents to redress alleged violations of first amendment and privacy rights. After citing the Supreme Court's decision in Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972) (rejecting claim based upon surveillance by armed services intelligence agencies), we provided the following comments in support of our decision:
 
 
 29
 [I]t should be noted that the undercover investigation here was apparently prompted by the school officials' wholly legitimate concern about the possible illegal drug activity at Cousino High School. Plaintiffs do not allege that the undercover agent engaged in any conduct other than the investigation of illegal drug activity. Moreover, the investigation terminated shortly after the undercover officer failed to discover any evidence of drug trafficking at the school.
 
 
 30
 Gordon, 706 F.2d at 781.
 
 
 31
 Based on Gordon, which antedated the investigation in this case by two years, the defendants could have concluded only that their undercover operation would not infringe any of their employees' privacy rights. In fact, the MSD investigation at issue here, unlike the operation in Gordon, uncovered evidence of pervasive drug use. Additionally, the evidence offered by plaintiff Henry suggests a much less compelling argument of pretextual inquiry aimed at a specific group than did the facts adduced in Gordon. In sum, we find that the district court properly applied the doctrine of qualified immunity to grant summary judgment for the defendants in their individual capacities on the right to privacy claim. The entry of summary judgment, therefore, is AFFIRMED.
 
 B. Due Process
 
 32
 Although the pleadings in this case offer no insight into the nature of the plaintiff's due process theory,[5] the plaintiff's briefs and his proposed second amended complaint (which the district court apparently refused to accept) suggest that malicious prosecution forms the basis for the claim. As early as March of 1985, we suggested that malicious prosecution may rise to constitutional dimension if it is "so egregious as to violate substantive due process." See Vasquez v. City of Hamtramck, 757 F.2d 771, 773 (6th Cir.1985). At that point, however, the substantive due process claim for malicious prosecution was neither formally recognized nor defined in a particularized manner. Moreover, as Vasquez indicated, only conduct so reprehensible as to "shock the conscience" could support liability on such a theory. See id.
 
 
 33
 We subsequently filled out and formally approved the substantive due process claim for malicious prosecution in McMaster v. Cabinet for Human Resources, 824 F.2d 518, 522 (6th Cir.1987), and Cale v. Johnson, 861 F.2d 943, 949-50 (6th Cir.1988). The difference between this case and Cale--where we reversed the entry of summary judgment for the defendants--is at least one of degree in that the conduct at issue here does not "shock the conscience." More importantly, McMaster and Cale were not available to the defendants when they took the challenged actions regarding Henry and several of his co-workers. The defendants could obtain guidance only from the Vasquez decision, which merely furnished a brief, generalized discussion of the substantive due process claim for malicious prosecution that plaintiff Henry apparently has alleged in this case. See Vasquez, 757 F.2d at 773. This type of authority cannot provide a "clearly established" right as contemplated by the Supreme Court in Anderson, 483 U.S. at 640, 107 S.Ct. at 3039. Accordingly, we AFFIRM the district court's determination that the defendants are entitled to qualified immunity on the plaintiff's substantive due process claim.
 
 C. Equal Protection
 
 34
 "To state a claim under the Equal Protection Clause, a Sec. 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." Johnson v. Morel, 876 F.2d 477, 479 (5th Cir.1989) (en banc ). Here, the plaintiff's equal protection claim is predicated upon the allegation that he was singled out for investigation and discipline because of his union membership. In Lyng v. International Union, UAW, 485 U.S. 360, 108 S.Ct. 1184, 99 L.Ed.2d 380 (1988), the Supreme Court "reject[ed] the proposition that strikers as a class are entitled to special treatment under the Equal Protection Clause." See id. at 370 n. 8, 108 S.Ct. at 1192 n. 8. Then, in Hoke Co. v. Tennessee Valley Authority, 854 F.2d 820 (6th Cir.1988), we deduced from Lyng v. UAW that union members do not "constitute[ ] a protected class for purposes of equal protection analysis...." Id. at 828. Therefore, we simply must consider whether the undercover operation at the MSD and the resulting disciplinary discharge of the plaintiff " 'is rationally related to a legitimate governmental interest.' " See id.
 
 
 35
 Here, the potential discovery of purportedly pervasive drug use provided an adequate basis for conducting the clandestine operation at MSD. Cf. Gordon, 706 F.2d at 781 (characterizing "undercover investigation [as] prompted by the school officials' wholly legitimate concern about the possibility of illegal drug activity"). The fact that union members may have been disproportionately affected by the investigation, standing alone, does not support a viable equal protection argument. See id. at 781 n. 3 ("We find no support for the plaintiff's suggestion that an undercover investigation is necessarily constitutionally infirm because the focus of that investigation was directed to classes where particular socio-political views were espoused."). The district court's entry of summary judgment on plaintiff Henry's section 1983 equal protection claim is AFFIRMED.
 
 
 36
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 37
 NATHANIEL R. JONES, Circuit Judge, concurring.
 
 
 38
 The majority's analysis of Henry's Sec. 1983 claims against the MSD and its officials in their official capacities suggests that those claims are barred by the eleventh amendment. Both plaintiff Henry and defendants do not challenge the district court's finding that these official capacity claims are so barred and Henry urges this court to remand this case to state court. I believe that the MSD--a statutorily created "public body corporate"--is subject to suit in federal court under Sec. 1983 as a municipal corporation under the Supreme Court's decision in Monell v. New York City Dep't of Social Services, 436 U.S. 658, 690 n. 54, 98 S.Ct. 2018, 2035 n. 54, 56 L.Ed.2d 611 (1978) and its progeny. However, as the parties have not raised this position on appeal, I write separately to make clear that the question of whether municipal corporate entities such as the MSD are subject to suit in federal court in a Sec. 1983 action was not decided in this case, and that the scope of eleventh amendment immunity with respect to such municipal corporate entities remains an open one in this circuit. Thus, as the panel's decision to leave the district court's eleventh amendment findings undisturbed in this case and remand to state court was a result of the lack of any challenge by the parties rather than a decision of law, I concur in the judgment.
 
 
 
 [1]
 The Kentucky Open Records Act claim apparently was resolved outside the judicial process. The district court's memorandum opinion and order disposing of the case make no mention of the claim, and the parties likewise have not addressed the claim on appeal
 
 
 [2]
 Neither the plaintiff nor the defendants have commented on the district court's decision to remand the abuse of process claim, which seemingly involves plaintiffs other than Henry. The district court's action in this respect is authorized by Carnegie-Mellon University v. Cohill, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), and contemplated by our decision in Service, Hospital, Nursing Home and Public Employees Union, Local No. 47 v. Commercial Property Services, Inc., 755 F.2d 499, 506 n. 9 (6th Cir.) ("This circuit has moved away from the position that the court has discretion to retain jurisdiction over a pendent state claim where the federal claim has been dismissed before trial."), cert. denied, 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985)
 
 
 [3]
 The entry of summary judgment encompassed the section 1983 claim against defendants Green, Wright, and Beck of Green & Associates, as well as the individual capacity claim against the MSD officials. Although Green, Wright, and Beck are private individuals rather than state officials, the Supreme Court has clearly stated in Dennis v. Sparks, 449 U.S. 24, 27-28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980):
 [T]o act "under color of" state law for Sec. 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of Sec. 1983 actions.
 
 
 [4]
 Because the eleventh amendment presents a jurisdictional bar to the section 1983 claim against the MSD and its officers in their official capacities, we cannot reach the defendants' alternative argument that Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), precludes this official capacity claim. See, e.g., Gwinn Area Community Schools v. State of Michigan, 741 F.2d 840, 847 (6th Cir.1984) (application of eleventh amendment precluded disposition on the merits, and thus mandated reversal of dismissal with prejudice of barred claims)
 
 
 [5]
 Our review of the complaint indicates that the plaintiff here, as in Coogan v. City of Wixom, 820 F.2d 170 (6th Cir.1987), has simply chosen to " 'aim[ ] in the general direction of the Constitution with buckshot.' " See id. at 174