**FRANCES J., et al., Plaintiffs–Appellants,**

v.

**Robert WRIGHT, et al., Defendants–Appellees.**

**No. 93–1099.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 9, 1993.

Decided March 21, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied May 3, 1994.

Patrick T. Murphy, Miriam H. Soloveichik, Office of Cook County Public Guardian, Chicago, IL, Kathleen G. Kennedy, Therese Schafer (argued), Office of Public Guardian, Chicago, IL, for Frances J. and Willa B.

John E. Huston, Karen Elaine Konieczny (argued), Office of Atty. Gen., Chicago, IL, for Philip Bradley.

Jennifer A. Keller, Asst. Atty. Gen. (argued), Office of Atty. Gen., Civ. Appeals Div., Chicago, IL, for Nancy Nelson.

Before GIBSON,* CUMMINGS, and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

In this case Frances J. and Willa B. represent a class of mentally impaired adults over the age of 60 who have been or will be adjudicated disabled in the probate court of Cook County. On the plaintiffs' behalf, the Cook County Public Guardian filed suit, in state court, against two state officers in their official capacity ("Defendants"), alleging that they violated the plaintiffs' constitutional rights and misapplied state law. Defendants removed the case to federal court and subsequently moved to dismiss the plaintiffs' complaint. The district court granted Defendant's motion. Plaintiffs here appeal. Because the federal courts lack subject matter jurisdiction over this case, we vacate the judgment of the district court and remand this case with the instructions that the district court remand it back to the state courts.

## I. Background

The named plaintiffs, Frances J. and Willa B., represent a class of elderly persons, most of whom suffer from Alzheimer, dementia or organic brain syndrome dysfunctions. At the time this suit was filed, Frances, at 75 years old, suffered from an organic brain syndrome dysfunction, while Willa, at 100, suffered from dementia of the Alzheimer type. Both are so severely disabled that the probate court appointed Patrick T. Murphy, the Cook County Public Guardian ("Guardian"), to direct their legal affairs. Defendants, Phil Bradley as the director of Illinois Department of Public Aid ("IDPA"), and Nancy Nelson as the acting director of the Illinois Department of Aging ("IDOA"), were sued in their official capacities only. Since the filing of this suit both Mr. Bradley and Ms. Nelson have been succeeded in their official duties by Robert Wright and Maralee Lindley respectively, and thus, pursuant to F.R.A.P. 43(c), Mr. Wright and Ms. Lindley have been substituted in the caption.

On the plaintiffs' behalf, the Guardian is attempting to obtain certain home health-care benefits for the plaintiffs that are provided by the state though IDOA.[1] In Illinois, the IDOA administers these health-care benefits through its Community Care Program ("Program"). As part of the Program, the IDOA has established the "Determination of Needs Analysis" ("DONA") test to assess the requisite level of home health-care services needed by an applicant. Depending on an applicant's DONA score, the state will reimburse the Guardian for the allowed level of home health-care services. In this case, after the IDOA found the plaintiffs eligible for less than the maximum number of Program benefit dollars,[2] the Guardian filed suit in state court for damages, a declaratory judgment, and injunctive relief. In their state-court complaint, the plaintiffs alleged violations of substantive due process, procedural due process and equal protection rights, along with violations of the Rehabili-

---

* The Honorable Floyd R. Gibson, of the Eighth Circuit, sitting by designation.

1. These benefits would permit Plaintiffs to receive their health care in their homes instead of in an institutional nursing facility.

2. Frances, with a DONA score of 71/100, qualified for seven hours of home health-care services per day, for a monthly total of $919.00 out of a possible $1,445.00. Similarly, Willa, with a DONA score of 71/100, qualified for five and a half hours of home care per day, or $838.00 out of the $1,445.00 possible per month. We are uncertain why Frances and Willa, both with a DONA score of 71/100, received unequal monthly benefits. However, since our resolution of this case does not depend on such treatment, we note this oddity without further comment.

tation Act of 1973. Defendants removed the case to federal court, where the district court dismissed the suit for failure to state a claim. Here, the plaintiffs have appealed. We do not reach the merits of the plaintiffs' contentions because this case is beyond the removal jurisdiction of the federal courts. Accordingly, we must vacate the district court's judgment and remand this suit with instructions to remand it to state court.

## II. Analysis

The procedural path of this case highlights a peculiar sequence of decisions by Defendants. Initially this case was filed by the plaintiffs in the state courts of general jurisdiction. But Defendants, after removing this case to federal court on their own motion, now argue that this same federal forum lacks any subject matter jurisdiction, by the *Hans* doctrine,[3] to hear all but the prospective claims of this case. We are curious why Defendants would engage in such a paradoxical jurisdictional maneuver, unless they merely had hoped to split the prospective relief claims from those that are retrospective in nature. Whatever their reason, stratagem, or lack thereof, for our part we can only send this whole matter back from whence it came. Under the federal removal statute, this case should not have been removed without Defendants first producing an authoritative waiver of the state's sovereign immunity.

### A. Removal

■ The linchpin of this court's jurisdiction is the case's removal pursuant to 28 U.S.C. § 1441(a).[4] The text of § 1441(a) specifies when a federal court may hear a case removed from state court. Notably, the language of this statute only authorizes the removal of *actions* that are within the original jurisdiction of the federal courts:

> Except as otherwise expressly provided by Act of Congress, any civil *action* brought in a State court of which the district courts of the United States have *original jurisdiction*, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a) (1948) (our emphasis). Thus, federal courts are straightaway restricted from removing actions where the action could not have been originally filed in federal court. *See Metcalf v. Watertown*, 128 U.S. 586, 589, 9 S.Ct. 173, 174, 32 L.Ed. 543 (1888). As we have opined recently in *Crosetto*, a state's sovereign immunity, whether rooted in the *Hans* doctrine or the Eleventh Amendment, limits the *original* subject matter jurisdiction of the federal courts. *See generally Crosetto*, 12 F.3d at 1400 ("In developing the *Hans* doctrine, the Eleventh Amendment has served as a historical framework for the Supreme Court's teaching that the Constitution never granted federal courts any judicial power over suits by a citizen against his own state.") (footnote omitted). By the plain meaning of § 1441(a), an action that contains claims barred by sovereign immunity, cannot, in whole or in part, be removed from the state courts to a federal forum because it is not an action within the original jurisdiction of the district courts.

We are not alone in our reading of § 1441(a). *See McKay v. Boyd*, 769 F.2d 1084, 1086–87 (5th Cir.1985). In *McKay*, the Fifth Circuit faced circumstances strikingly similar to those here before our court. Mr. McKay, an adjudicated incompetent, through

---

3. *Hans v. Louisiana*, 134 U.S. 1, 15, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890); *see also Crosetto v. State Bar of Wisconsin*, 12 F.3d 1396, 1400 n. 5 & n. 6, (7th Cir.1993) (discussing the interplay between the *Hans* doctrine and the Eleventh Amendment, in understanding the judicial power of the Article III courts, an initial matter, did not include the domain of cases between a citizen and his home state).

4. We have considered whether § 1441(c) could have alternatively stated authority for the removal of this case to federal court. We believe that the language of § 1441(c), by providing that "the entire case may be removed and the district court may determine *all* issues therein," 28 U.S.C. § 1441(c) (emphasis supplied), renders this statue inapplicable to the case at bar. Because the *Hans* doctrine bars a federal court from hearing claims against a citizen's home state in federal court, and, short of that sovereign's consent, the district court may not thus determine "all issues therein," this section seems incompatible with a case of this sort.

his guardian, sued the state of Mississippi among other defendants. The defendants successfully removed the entire case from state to federal court where the district court entered summary judgement in their favor. On appeal the Fifth Circuit vacated that judgment and remanded the entire case to the state court. The court reasoned that since some claims within Mr. McKay's original state action would be jurisdictionally barred from federal court, the plain language of § 1441(a), which requires the removing court to have jurisdiction over the entire action as if it were originally filed in that court, did not permit removal. The court concluded that "[the defendant's] motion for removal should not have been granted in the first place" without the defendant first obtaining an authoritative waiver of the state's sovereign immunity. *Id.* at 1087. Since *McKay,* three district courts in the Ninth Circuit have followed its reasoning to remand similarly removed sovereign-immunity cases, in their entirety, to state courts. In each of these cases the action contained at least one claim that would be barred by sovereign immunity. *See Simmons v. State of California,* 740 F.Supp. 781, 785 (E.D.Cal.1990); *Kelly v. California,* 687 F.Supp. 1494 (D.Nev. 1988), *affd.,* 880 F.2d 416 (9th Cir.1989); *Stephans v. State of Nevada,* 685 F.Supp. 217, 220 (D.Nev.1988).

In reaching our decision, we disagree, as some have asserted, that *McKay* and similar decisions must erroneously read *Hans* to bar federal jurisdiction over actions rather than single claims. *See Henry v. Metropolitan Sewer District,* 922 F.2d 332, 339 (6th Cir. 1990) (chiding *McKay* ); *see also Brewer v. Purvis,* 816 F.Supp. 1560, 1570 (M.D.Ga. 1993).[5] We agree such a reading of *Hans* would contravene *Pennhurst,* a case plainly teaching that *Hans* only bars claims and not entire cases from federal court. *See Henry,* 922 F.2d at 337, *citing Pennhurst v. Halderman,* 465 U.S 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984) ("A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment."). The sup-

posed criticism, such as raised in *Henry,* misses the mark. The question here, as in *McKay,* concerns not the jurisdictional scope of the *Hans* doctrine or the Eleventh Amendment, but rather, the scope of a federal court's removal jurisdiction as allowed under § 1441(a). From our reading of the removal statute, we agree with *McKay* —if even one claim in an action is jurisdictionally barred from federal court by a state's sovereign immunity, or does not otherwise fit within the original or supplemental (see 28 U.S.C. § 1367) jurisdiction of the federal courts, then, as a consequence of § 1441(a), the whole action cannot be removed to federal court.

■ We note that while our holding today is compelled by the text of § 1441(a), it is not without policy support. As the Supreme Court has taught from early in this Nation's history—state courts are competent and capable to decide those federal questions that, as under § 1441(a), would not be removable to a federal forum. *See Martin v. Hunter's Lessee,* 14 U.S. (1 Wheat.) 304, 4 L.Ed. 97 (1816). Since the Constitution's framers specifically chose to make the creations of lower federal courts optional, *see* U.S. Const. Art. III, had Congress decided not to exercise that option, state courts would necessarily act as the initial forum for the adjudication of nearly all federal questions. Today, as a general matter, state courts still have jurisdiction concurrent with that of lower federal courts to hear suits arising directly under federal law. *See Stone v. Powell,* 428 U.S. 465, 493 n. 35, 96 S.Ct. 3037, 3051 n. 35, 49 L.Ed.2d 1067 (1976). Since state courts have the power to adjudicate such federal questions, preventing a defendant from splitting a single case into two, one state and the other federal, furthers judicial economy. In any event, whatever the policy behind Congresses' language in § 1441(a), when applying a statute "we assume that the statute's operative words carry the plain meaning within their context." *Oberg v. Allied Van Lines, Inc.,* 11 F.3d 679, 683 (7th Cir.1993); *see also Connecticut Nat'l Bank v. Germain,* — U.S. —, —, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 ("When the words of a statute are unambiguous, then, this first cannon is also the last: 'judicial inquiry is complete.' "). As we

---

**5.** For an analysis of this case law, which we found unpersuasive, *see* Mitchell N. Berman, Note, *Removal and the Eleventh Amendment: the* *Case for District Court Remand Discretion to Avoid a Bifurcated Suit,* 92 Mich.L.Rev. 3 (1993).

read § 1441(a), a defendant cannot remove an action if it contains any claim that is barred by a state's sovereign immunity.

## B. Sovereign Immunity

██ Having concluded that § 1441(a) bars the removal of an action if it contains claims that would infringe a state's sovereign immunity, we must examine the claims here. Plaintiffs brought this suit against the Director of the IDPA and the IDOA in their official capacities requesting the district court to order the IDOA to immediately reimburse the Office of the Public Guardian for all public funds the Guardian has expended on Frances and Willa for which the IDOA should have paid. To the extent the plaintiffs' claims sought retrospective relief to be paid from the state's treasury, they are barred under the *Hans* doctrine, unless the state has explicitly consented to suit in federal court.

██ This constitutional bar to federal jurisdiction applies to suits against any state, *Hans*, 134 U.S. at 15, 10 S.Ct. at 507, its departments or agencies, *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1979), and its officials when "the state is the real substantial party in interest," *Ford v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). For state officials, "[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Hawaii v. Gordon*, 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963). A decree operates against the state if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (citations omitted); *see also Crosetto*, 12 F.3d at 1402; *Zych v. Wrecked Vessel Believed to be the Lady Elgin*, 960 F.2d 665, 669 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 491, 121 L.Ed.2d 430 (1992). As a general rule, suits brought against state officials in their official capacities are suits brought against the state. *See Hafer v.*

*Melo*, —— U.S. ——, ——–——, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989). "[A] suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst*, 465 U.S. at 102, 104 S.Ct. at 909, *citing Cory v. White*, 457 U.S. 85, 91, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982).

██ An exception to the general rule of *Hans* has been recognized where an official-capacity suit challenges the legality of an official's conduct under the Constitution or federal law. *Ex Parte Young*, 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908). The theory in such cases is that a state cannot authorize actions by state officials that are contrary to the "the supreme authority of the United States." *Id.* at 160, 28 S.Ct. at 454. When an official undertakes such an action, he is fictionally "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Id.* However, a federal court may only award injunctive relief that governs the official's future conduct. *Green v. Mansour*, 474 U.S. 64, 74, 106 S.Ct. 423, 429, 88 L.Ed.2d 371 (1985). Thus, without waiver, official capacity suits for monetary or other retrospective relief still remain outside federal jurisdiction. *Green*, 474 U.S. at 74, 106 S.Ct. at 429; *Edelman v. Jordan*, 415 U.S. 651, 667–68, 94 S.Ct. 1347, 1357–58, 39 L.Ed.2d 662 (1974); *Crosetto*, 12 F.3d at 1402; *MSA Realty Corp. v. State of Illinois*, 990 F.2d 288, 292–94, 295 (7th Cir.1993). The plaintiffs' request for reimbursement from the IDOA is clearly a claim seeking retrospective relief. Therefore, it is beyond the ordinary scope of federal jurisdiction and, under our reading of § 1441(a), its removal is improper without Defendants first obtaining the state's consent to be sued for retrospective relief in federal court. *Kroll v. Board of Trustees*, 934 F.2d 904, 909–10, (7th Cir. 1991).

██ As a general matter Illinois has consented to such suits in its own state courts, in a manner prescribed by the General Assembly. Ill. Const. art. 13, § 4 (1971);

see also *Osteen v. Henley*, 13 F.3d 221, 223 (7th Cir.1993). However, a state may consent to certain suits in its own courts without waiving its constitutional immunity from such suits in the federal forum. *See Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985); *Osteen*, 13 F.3d at 223–24; *Kroll*, 934 F.2d at 907–10. The Supreme Court has stated that a state's consent to claims in the federal courts must be "stated by the most express language or by such overwhelming implication from the text as to leave no room for any other reasonable construction." *See Kroll*, 934 F.2d at 909, *citing Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 305–06, 110 S.Ct. 1868, 1873, 109 L.Ed.2d 264 (1990), *citing Atascadero v. State Hosp. v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). According to the Court, even a provision of California's Constitution that read "[s]uits may be brought against the State in such manner and in such courts as shall be directed by law," did not waive the State's *Hans* immunity. *Atascadero*, 473 U.S. at 241, 105 S.Ct. at 3146, *citing* Cal. Const. art. III, § 5. Thus, here neither article XIII, section 4 of the Illinois Constitution, nor the mere fact that Defendants removed the case to federal court can be construed as the kind of explicit waiver of federal sovereign immunity required by the Court. While Illinois may well have waived retrospective-claims against itself in its own courts, no evidence exists here that it in any way consented to suits over such claims in federal court. Therefore, without Illinois' consent, the district court lacked subject matter jurisdiction, under *Hans*, to hear the retrospective claims of this case.

### III. Conclusion

Having determined that the plaintiffs' action contained claims that are outside the original jurisdiction of the federal courts, under § 1441(a), their action should not have been removed from state to federal court. Without proper removal the district court lacked jurisdiction. Therefore, we must vacate its judgment and remand this case with the instruction that it be remanded to state court.

VACATED AND REMANDED.