**Elaine IHEAMA, et al., Plaintiffs,**

**v.**

**MAHONING COUNTY MENTAL HEALTH BOARD, et al.,**
**Defendant.**

**No. 4:96CV2154.**

United States District Court,
N.D. Ohio.

Sept. 12, 2000.

Matthew C. Giannini, Dennis J. Sarisky, Youngstown, OH, for plaintiffs.

Elaine Iheama, Youngstown, OH, pro se.

Martin S. Delahunty, III, Friedman, Domiano & Smith, Cleveland, OH, Stephen C.

Merriam, Ulmer & Berne, Cleveland, OH, for defendants.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

This matter is before the Court upon the Defendants' Motion for Summary Judgment (Dkt.# 46).

On March 26, 1997, this Court dismissed all of the Plaintiffs' equitable claims contained in the Second and Third Causes of Action, leaving only the claims for monetary relief and attorney fees in the First Cause of Action. The Plaintiffs' First Cause of Action asserts two separate claims: (1) a violation of the Equal Protection Clause of the Fourteenth Amendment based on racial discrimination; and (2) a procedural due process claim for deprivation of liberty and property interests in violation of the Fifth and Fourteenth Amendments.

For the following reasons, the Defendants' summary judgment motion (Dkt.# 46) is **GRANTED in part and DENIED in part.**

### FACTS

The Plaintiff Elaine Iheama ("Iheama") is the president and sole shareholder of the Plaintiff, Southgate I & II, Inc. ("Southgate"), which is an Ohio corporation, located in Youngstown. Southgate was engaged in the operation of adult care facilities, or group homes.[1] (Amended Complaint ¶¶ 1–2.) On multiple occasions, the Plaintiff attempted to enter into an affiliation agreement with the Defendant Mahoning County Mental Health Board ("MCMHB"). (Amended Complaint ¶ 9.) An affiliation agreement is an agreement between the operator of a group home that provides services to individuals with mental illness or mental disabilities and a mental health services provider. The Plaintiffs assert that their group homes met all of the applicable guidelines necessary to enter into an affiliation agreement with the MCMHB, yet the MCMHB failed to enter into an agreement. (Amended Complaint ¶¶ 10, 12.) The Plaintiffs further contend that the MCMHB also failed to provide a legitimate explanation for not entering into an agreement with them. (Amended Complaint ¶ 14.) Due to their failure to obtain an affiliation agreement with the MCMHB, the Plaintiffs' application for a state license for an adult care facility was denied. (Amended Complaint ¶¶ 11, 15) The Plaintiffs acknowledge that an affiliation agreement is required for licensing as an adult care facility. (Amended Complaint ¶ 11.) The Plaintiffs argue, though, that MCMHB was granted the authority under the Ohio Administrative Code to enter into affiliation agreements with group homes in Mahoning County, Ohio, and was required to do so with the Plaintiffs. (Amended Complaint at ¶ 3.)

However, the Defendants contend that entering directly into affiliation agreements is not within the discretion of the Executive Director, Ronald Marion ("Marion"), and that the MCMHB has completely delegated its power to enter into such agreements to local state-certified mental health agencies. (Marion Affidavit ¶ 3.) Therefore, the appropriate procedure for obtaining an affiliation agreement in Mahoning County is for an adult care facility to enter into one with a state-certified mental health agency who will place patients there. (Marion Affidavit ¶ 4.) Once a group home operator obtains an affiliation agreement from a state-certified mental health agency, the agency requests approval of the agreement from the MCMHB as to form only. The MCMHB attests merely to the fact that the affiliation agreement is fair, complete and equitable. (Marion Affidavit at ¶ 5–6.) The MCMHB is not a party to the agreement. (Marion Affidavit at ¶ 6.) Marion further

---

1. According to the O.A.C. 3701–20–01(F), "Adult care facility" means "an adult family home or an adult group home ... facility that provides accommodations and supervision to three to sixteen unrelated adults, at least three of whom are provided personal care services..."

asserts that the Plaintiffs have at no time presented him or the MCMHB with a request by a state-certified mental health agency for approval of an affiliation agreement. (Marion Affidavit at ¶ 8.) Moreover, the Plaintiffs state in their Response (Dkt.# 49) to the Defendants' summary judgment motion that when the MCMHB rejected their application for an affiliation agreement with it, they were instructed to seek an affiliation agreement with a state-certified mental health agency such as Parkview Counseling ("Parkview"). It is undisputed that the MCMHB did not enter into affiliation agreements with any other group home operators.

The Plaintiffs assert that they attempted to enter into an affiliation agreement with Parkview Counseling ("Parkview"), but that Parkview would not do so. The Plaintiffs also note that they attempted to amend the Complaint in this matter to include a claim against Parkview, but that request was denied.

### ANALYSIS

Fed.R.Civ.P. 56(c) governs summary judgment and provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the evidence submitted must be viewed in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

"The burden on the moving party may be discharged if the moving party demonstrates that the non-moving party has failed to establish an essential element of his or her case for which he or she bears the ultimate burden of proof at trial." *Morales v. American Honda Motor Co., Inc.*, 71 F.3d 531, 535 (6th Cir.1995). If the moving party meets this burden, then the non-moving party must present additional evidence beyond the pleadings. *Id.* The non-moving party must present more than a scintilla of evidence in support of his or her position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment must be granted unless there is sufficient evidence favoring the non-moving party for a judge or jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. 2505.

### Equal Protection—Racial Discrimination

The Plaintiffs assert that their application for a group home affiliation agreement was denied by the Defendants based on race, and, as such, their constitutional right to equal protection of the laws under the Fourteenth Amendment was violated. The Equal Protection Clause of the Fourteenth Amendment requires "that all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Purisch v. Tennessee Technological University*, 76 F.3d 1414, 1424 (6th Cir.1996) (quoting *Henry v. Metropolitan Sewer District*, 922 F.2d 332, 341 (6th Cir.1990)). Consequently, being a member of a protected class is an essential element in bringing a § 1983 claim in violation of the Equal Protection Clause. Iheama is an African-American. As such, she is a member of a protected class for the purpose of analyzing her racial discrimination claim. Furthermore, Southgate can also maintain its equal protection claim against the Defendants based on the alleged discrimination

against it because of the race of its president and sole shareholder, Iheama.

■ The initial burden of proving a racial discrimination claim is on the Plaintiffs. *See Buchanan v. City of Bolivar, Tenn.,* 99 F.3d 1352 (6th Cir.1996) ("In opposition to a motion for summary judgment, it is plaintiff who possesses the burden of demonstrating that the defendants treated similarly situated individuals in a disparate manner.") The Plaintiffs, however, have not offered any evidence that they were denied a group home affiliation agreement based on race. The Plaintiffs have not provided evidence of an MCMHB policy, either express or implied, which discriminates against persons and entities based upon race. Nor have the Plaintiffs provided any evidence that they were denied a group home affiliation agreement based on race where other similarly situated persons and entities were granted such agreements by the MCMHB. Because the Plaintiffs have not provided any evidence of disparate treatment based upon race, their claim that the MCMHB violated the Equal Protection Clause of the Fourteenth Amendment fails as a matter of law.

### Due Process Violation

The Plaintiffs allege that the Defendants deprived them of their property without due process of law in violation of their Fifth and Fourteenth Amendment rights by not providing an adequate procedure by which they could obtain an affiliation agreement, which is a requirement for a state license to operate a group home.

■ The Plaintiffs must establish three elements to support a procedural due process claim:

(1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

(2) that they were deprived of this protected interest within the meaning of the Due Process Clause; and

(3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest.

*Hahn v. Star Bank,* 190 F.3d 708, 716 (6th Cir.1999). Furthermore, the Sixth Circuit has held that "the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Id. (quoting Vicory v. Walton,* 721 F.2d 1062, 1066 (6th Cir.1983)). As such,

a party may maintain a procedural due process § 1983 case in federal court if he alleges and proves that there was a constitutional violation under color of law and:

1. The state did not have a remedy; or

2. The state had a remedy but it was deemed inadequate; or

3. The state had an adequate remedy in form, both procedurally and in damages, but the state did not apply it or misapplied its remedy.

*Id. (quoting Haag v. Cuyahoga County,* 619 F.Supp. 262, 278–83 (N.D.Ohio 1985), *aff'd,* 798 F.2d 1414 (6th Cir.1986)).

■ Under Ohio Law, the operator of an adult care facility must enter into an affiliation agreement in order to meet one of the requirements of licensing pursuant to O.A.C. § 3701–20–03(A)(5). O.A.C. § 3701–20–17(H) provides as follows:

In the case of an adult care facility providing personal care services to one or more individuals with mental illness or with severe mental disabilities who are referred by or are receiving mental health services from a mental health agency, as defined in section 5119.22 of the Revised Code, the *facility shall have a currently valid affiliation agreement between the adult care facility and the community mental health board or an affiliation agreement approved by the community mental health board between the adult care facility and the mental health agency.* The affiliation agreement must be consistent with the residential portion of the community

mental health plan submitted pursuant to R.C. 340.03 of the R.C.

This regulation does not require a community mental health board, such as the MCMHB, to enter into affiliation agreements with group home operators. Rather, the regulation authorizes either community health boards *or* state-certified mental health agencies to enter such agreements. Nothing in the Ohio Administrative Code prevents the MCMHB from delegating its power to enter such agreements to state-certified mental health agencies. Therefore, the Defendants' refusal to enter into an affiliation agreement with the Plaintiffs, where there was an alternative procedure in place for obtaining such an agreement, did not deprive the Plaintiffs of their interest in operating group homes.[2] However, there is no procedure in place when a mental health agency to which the MCMHB has delegated all of its power to enter into affiliation agreements refuses to enter such an agreement with a group home operator.

Accordingly, the Plaintiffs have established the elements of a procedural due process claim. The Plaintiffs first have shown that they have a protected interest in operating their group homes. In *Wilkerson v. Johnson*, 699 F.2d 325 (6th Cir.1983), the Sixth Circuit reasoned:

Liberty and property interests are intricately related in our system of political economy, a system based on free choice of careers and occupations, private property, and the right to compete. *Lynch v. Household Finance Corp.*, 405 U.S. 538, 552, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972) (Justice Stewart for the Court observed that "a fundamental interdependence exists between the personal rights to liberty and the personal right in property.") A complex of rights and duties characterizes any particular liberty or property interest. Generally speaking, freedom to choose and pursue a career, "to engage in any of the common occupations of life," *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), qualifies as a liberty interest which may not be arbitrarily denied by a State. When governmental institutions regulate careers or occupations in the public interest through the licensing process, their definitions of rights in a license or other statutory entitlement may give rise to competition rights and constraints that define property interests. *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) ("suspension of issued licenses thus involves state action that adjudicates important interests.") [ ] The regular and impartial administration of public rules governing these interests, as required by due process, prohibits the subtle distortions of prejudice and bias . . . .

*Wilkerson*, 699 F.2d at 328. The MCMHB has exclusively delegated the power to enter into affiliation agreements with group home operators to mental health agencies. Therefore, when these agencies refuse to enter into such agreements, the protected liberty and property interests of group home operators are unavoidably affected.

With respect to the second element, there is no procedure in place when a state-certified mental health agency, like Parkview, refuses to enter such an agreement with a group home operator. In other words, mental health agencies to which the MCMHB exclusively delegated its power to enter into affiliation agreements can deny a group home operator an affiliation agreement, thus depriving them of their right to due process.

Finally, the Plaintiffs have established the third element of a procedural due process claim by showing that when the Plaintiffs requested an affiliation agreement with Parkview, and were denied, they had no procedural remedy whatsoever through the MCMHB. The MCMHB has delegat-

---

**2.** The Court also notes that the Plaintiffs do not contend that the MCMHB has directly entered into an affiliation agreement with any other adult care facilities. Thus, the MCMHB consistently applies its procedures to all adult care facility operators, and as such, has not deprived the Plaintiffs of their right to procedural due process in this regard.

ed all of its authority to enter into affiliation agreements under O.A.C. § 3701–20–17(H) to mental health agencies, and has not provided any procedural remedy when those agencies deny group home operators, like the Plaintiffs, affiliation agreements. In theory, the Plaintiffs could have approached all of the state-certified mental health agencies located in Mahoning County, and each one of them could have denied the Plaintiffs' request for an affiliation agreement. No procedure exists for the Plaintiffs to appeal those denials through the MCMHB. Nor is there any mechanism by which the Plaintiffs can pursue an affiliation agreement with the MCMHB as a last resort. Presumably, if the MCMHB denied an affiliation agreement, a group home operator could appeal that decision to the Court of Common Pleas, and so on. However, under the approach taken by the MCMHB, there is no appeal procedure whatsoever. Absent a procedural remedy, the agencies to whom the MCMHB has delegated its authority can arbitrarily deny applications for affiliation agreements and leave the applicants without any redress other than to file a Federal lawsuit. As such, there is no procedural remedy through the MCMHB when a mental health agency denies a group home operator an affiliation agreement.

Accordingly, as applied by the MCMHB, O.A.C. § 3701–20–17(H), deprives the Plaintiffs of their right to procedural due process and summary judgment is not warranted on this claim.

### CONCLUSION

Accordingly, for the foregoing reasons, the Defendant's Motion for Summary Judgment (Dkt.# 46) is **GRANTED in part and DENIED in part**. A scheduling order setting a date for a status conference shall be forthcoming.

**IT IS SO ORDERED.**